[Crim. No. 950. First Appellate District, Division One.—May 19, 1921.]

## THE PEOPLE, Respondent, v. JOHN DE VRIES, Appellant.

[1] CRIMINAL LAW—PERJURY—FALSE TESTIMONY BEFORE GRAND JURY —NONACCEPTANCE OF BRIBES—PLEADING—TIME OF COMMISSION— SUFFICIENCY OF INDICTMENT.—An indictment charging a defendant with perjury in falsely testifying before the grand jury that he did not accept certain bribes, which alleged that the offenses occurred "during the year 1919," is not subject to demurrer for uncertainty for failure to specify the exact times of the commission of the offenses, where the parties paying, the amounts, and the purposes for which they were paid were set forth with sufficient particularly to inform the defendant as to what was intended and what evidence of particular acts might confront him at the trial.

[2] ID.—OMNIBUS ALLEGATION — UNCERTAINTY. — An omnibus allegation in such an indictment that the defendant took bribes from divers persons to the grand jury unknown and did various other unlawful acts and things is indefensible, and the demurrer thereto for uncertainty should have been sustained.

[3] ID.—ADMISSION OF EVIDENCE UNDER ALLEGATION—INSUFFICIENT GROUND FOR REVERSAL—CUMULATIVE CHARACTER.—The erroneous admission of evidence under such an allegation is not a sufficient ground for reversal where such evidence was but cumulative of other evidence which established the guilt of the defendant.

[4] ID.—DEMURRER TO COUNTS OF INDICTMENT—APPEAL—WHEN NOT REVIEWABLE.—Where the appellant in such a prosecution fails to give any reasons why his demurrer to certain counts of the indictment should have been sustained, and they are not subject to the objection urged against a different count, and to determine whether or not there is merit in his contention will necessitate an independent examination and inquiry as to the correctness of the court's ruling, the appellate court is not required to make such inquiry and examination.

[5] ID.—EVIDENCE—TIME OF PAYMENT OF BRIBE.—Where in such prosecution a witness testified that he paid the defendant money in 1918, and a bank clerk testified that the witness drew the amount from his account in February, 1919, such testimony was not to be rejected for uncertainty as to exact time when the bribe was paid.

[6] ID.—POSSESSION OF SAFE DEPOSIT BOX.—Where in such prosecution a witness testified that he withdrew an amount from his safe deposit box and paid it to the defendant, there was no error in permitting a bank clerk to testify that the witness had such a box in the vaults of the bank.

52 Cal. App.—45

[7] ID.—INSTRUCTION—OBJECTION AND STRIKING OUT OF TESTIMONY.—
In such prosecution, the defendant was not harmed by the refusal
of the court to give an instruction relating to the right of coun-
sel to object to the introduction of evidence, and to move to strike
it out if so advised, and that the jury should disregard any tes-
timony stricken from the record, since the major part of the in-
struction related to matters common to the conduct of every trial
with which the jurors were already familiar, and the remaining
portion was covered elsewhere in the charge.

[8] ID.—MISCONDUCT OF DISTRICT ATTORNEY—REFERENCE TO LIMITED
EXAMINATION OF DEFENDANT.—In such prosecution it was error
for the district attorney in his argument to the jury to make
reference to the limited examination of the defendant, but is not
a sufficient ground for reversal, where no assignment of miscon-
duct was made until after the argument had been concluded and
the evidence clearly established the guilt of the defendant.

APPEAL from a judgment of the Superior Court of
the City and County of San Francisco. Michael J. Roche,
Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank M. Carr and Chas. H. Brennan for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan,
Deputy Attorney-General, for Respondent.

WASTE, P. J.—The defendant was indicted on four
counts for the crime of perjury. His demurrer to the in-
dictment was overruled. He was tried, convicted on the
first, third, and fourth counts, and sentenced to imprison-
ment in the state prison. He appeals from the judgment,
and from the order denying his motion for a new trial,
urging as reasons for a reversal that the court erred in
overruling the demurrer to the indictment, in its decisions
on questions of law arising during the course of the trial,
and that the court misdirected the jury. Alleged miscon-
duct of the district attorney during the course of the trial
and in his closing argument to the jury is assigned by the
defendant as prejudicial error.

The allegation of the first count of the indictment is that
the defendant swore falsely as to material matter while a
witness under oath before the grand jury of the city and
county of San Francisco, in an investigation of the charge

that the defendant and others, in their capacity as inspectors for the state board of pharmacy, took and received bribes from, and were guilty of official misconduct with, persons suspected or accused of violating the laws with respect to the use and disposition of narcotics. The alleged false testimony is set out in full in the count. The defendant was not examined as to any specific acts, the questions being directed to the fact if he "ever" received any bribes, or was "ever" guilty of misconduct as charged, to all of which he entered a positive denial. These allegations are followed by the averments that the testimony was and is false, and was known to the defendant to be untrue. In addition to the general assignment of perjury, the count contains a statement of particular facts from which it is made to appear that De Vries did accept money from a number of persons, and was otherwise guilty of the gross official misconduct for which he was under investigation by the grand jury. It was positively alleged that "during the year 1919," L. L. Gantz, Sam Shurgin, and Sam Morlen *alias* David Ross, illicit venders and dealers in narcotics, paid defendant varying sums of money "for the purpose of corruptly influencing and affecting him in the discharge of his duties," as inspector for the state board of pharmacy. There is a further allegation that "said De Vries did solicit, take and receive money and other valuable divers things from divers persons, to this Grand Jury unknown," and that said "John De Vries did do and perform various other unlawful acts and things hereinbefore specified."

[1] The defendant interposed a general and special demurrer to this count, upon the ground that it fails to comply with the sections of the Penal Code requiring an indictment to contain a statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended. The demurrer was overruled, and appellant renews the objection on this appeal. There is nothing in the contention that the indictment is uncertain in not specifying the exact time and place at which Gantz, Shurgin, and Morlen paid the money to appellant. It was alleged to have been "during the year 1919," it is true, but the parties paying the amounts, and the purposes for which they were paid, were set forth with sufficient particu-

larity to inform the defendant as to what was intended, and what evidence of particular acts might confront him at the trial in proof of the falsity of his testimony, which was the only offense charged against him by the indictment.

[2] There is more merit in appellant's arraignment of the omnibus allegations that the defendant took bribes from "divers persons to the Grand Jury unknown," and did "various other unlawful acts and things." Such a plea in an indictment is indefensible, and the demurrer for uncertainty should have been sustained. (*People* v. *Bradbury*, 155 Cal. 808, 811, [103 Pac. 215].) If the sufficiency of the first count of the indictment depended solely upon that allegation, its uncertainty would be fatal. But, as the other allegations of the indictment meet the requirements of the law, and the record clearly establishes the guilt of the defendant, it is only necessary to determine whether or not the appellant was prejudicially injured by the overruling of the demurrer for uncertainty.

[3] The witnesses Gantz, Morlen, and Shurgin each testified positively to paying money to the defendant, as alleged in the indictment. They were corroborated by the direct word of other witnesses and circumstantial evidence. There can be no doubt as to defendant's guilt. He complains that he was confronted with a number of other witnesses, whose identity and the nature of whose testimony were not disclosed by the indictment. Two of these witnesses, Miller and Solomon, connected the appellant with Morlen, and their testimony was properly admitted. The witnesses Dolan, Attix, and Mrs. Attix testified to matters not specified in the indictment, but which conclusively established defendant's connection with the illicit sale and disposition of drugs. The witness Silverstein, another dealer in drugs and narcotics, testified that for a time he had paid the defendant sixty dollars per month to secure his dismissal upon being arrested, and for further protection in his illegal business. Whether this testimony was admissible under the rule permitting evidence of similar offenses to be received for the purpose of showing guilty knowledge and intent, as contended by the attorney-general, which seems doubtful in this case, or whether it was admitted by the court under an apparent mistake as to the value of the omnibus allegation in the indictment, it seems clear to us

that it was but cumulative to other evidence which established the guilt of the defendant beyond all reasonable doubt. Besides, it did tend to prove that the defendant swore falsely before the grand jury. On the whole record we do not see how the jury could have reached any other verdict, even though the testimony had been rejected.

[4] Appellant has failed to give any reasons why his demurrer to counts three and four of the indictment should have been sustained. They are not subject to the objection urged against the first count, and to determine whether or not there is merit in appellant's contention would necessitate an independent examination and inquiry as to the correctness of the court's ruling, which we are not required to make. (*People* v. *Woon Tuck Wo*, 120 Cal. 294, 297, [52 Pac. 833]; *People* v. *Castro*, 42 Cal. App. 453, [183 Pac. 828].)

[5] Gantz testified he paid defendant seven hundred dollars in 1918. The witness Buckley, chief clerk of the Bank of Italy, testified that Gantz drew that amount from his bank account on February 4, 1919. Appellant contends that this last testimony should have been rejected, for the reason that there was uncertainty, and some improbability, as to the exact time the bribe was paid. Both Gantz and the witness Zeh may have been mistaken as to the dates testified to by them. That was a matter for the consideration of the jury. [6] The witness Morlen testified that he withdrew five thousand dollars from his safe deposit box in the Anglo-California trust company on January 6, 1919, and paid the amount to appellant on the next day. There was, therefore, no error in allowing McRow, the clerk of the bank, to testify that Morlen had a safe deposit box in the vaults of the bank, and that he visited it on January 6th.

[7] The appellant was not harmed by the refusal of the court to give an instruction relating to the right of counsel to object to the introduction of evidence, and to move to strike it out if so advised, and that the jury should disregard any testimony stricken from the record. The major part of the instruction related to matters common to the conduct of every trial, with which the jurors were already familiar, and the remaining portion was covered elsewhere in the charge. Appellant's proposed instruction that if the testimony failed to establish proof of any of the elements

necessary to constitute the crime of perjury, as defined by the court, it was the duty of the jurors to acquit him, was fully covered with great particularity in the charge, which was comprehensive and fair. The court instructed the jury that it should not take into consideration, in arriving at a verdict, the fact that there might be pending against the defendant, or any other witness, other charges growing out of the same or other transactions. Just what was the purpose of the instruction and to what point it was considered material is not apparent. Whether directed to the credibility of the witnesses or to the likelihood of the guilt of the defendant does not appear. The instruction, however, appears to have done no harm. Appellant has not shown that it did. So far as we are aware, he was under no other charge than the one for which he was being tried, and several of the witnesses were.

[8] Complaint is made that the district attorney was guilty of misconduct in the argument to the jury. With one exception, it appears that the assignments of such conduct as error were not made until after the district attorney had concluded. The court is, therefore, not bound to consider them on appeal. (*People* v. *MacDonald*, 167 Cal. 545, 551, [140 Pac. 256].) We have examined the record, however, and while it is manifest the district attorney did go afield in his remarks, no flagrant misconduct appears except in one instance—when he referred to the limited examination of the defendant. That was clearly error. (*People* v. *McGungill*, 41 Cal. 429; *People* v. *Derwae*, 155 Cal. 592, [102 Pac. 266].) But in view of the fact that no assignment of the remarks as misconduct was made at the time, and in view of the further fact that the evidence against the defendant so clearly establishes his guilt, we feel we should not reverse the judgment for that reason alone. (*People* v. *Nakis*, 184 Cal. 105, [193 Pac. 92].) The records in appealed criminal cases disclose an increasing persistence on the part of prosecuting attorneys to go beyond the line of proper conduct in their arguments. So frequently is this being done, that while we disavow any imputation of willful misconduct in the instant case, we are becoming convinced that overzealous prosecutors sometimes do it intentionally, and rely on the appellate court to save a conviction by the application of section 4½ of article VI of

the constitution. There are bounds beyond which the saving grace of that provision may not pass, and the appellate courts should not be called upon to spread it, like "a mantle of sweet charity," over intentional acts of misconduct. Frequent warnings in relation to the practice proving ineffectual, reversals on appeal must be anticipated if right of defendants to a fair trial is to prevail.

The judgment and the order denying a new trial are affirmed.

Kerrigan, J., and Richards, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 17, 1921, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 18, 1921.

All the Justices concurred, except Wilbur, J., who was absent.