[Crim. No. 1398. First Appellate District, Division One.—February 9, 1928.]

THE PEOPLE, Respondent, v. J. E. ROSS, Appellant.

Nathan Merenbach for Appellant.

U. S. Webb, Attorney-General, and Emery F. Mitchell, Deputy Attorney-General, for Respondent.

KNIGHT, J.—Appellant was found guilty of the crime of rape and has appealed from the judgment of conviction and the order denying his motion for a new trial. His defense was that he was not present at the time or place of the alleged crime, and on this appeal he contends that the testimony offered in support of his alibi, when considered with other circumstances shown by the evidence, proves that he is the victim of mistaken identity, and that therefore the verdict is contrary to the evidence.

It appears from the record that the crime was committed upon a young married woman named DiFiori in her home on a small ranch just outside the city of San Jose, where she lived with her husband and infant child. On the day in question, October 18, 1926, she had been left alone with her baby while her husband went to San Jose to repair his automobile. About ten minutes past noon a strange man called and inquired for her husband, stating that he was a salesman from Cuthbert's garage and wanted to interest him in the purchase of an automobile. The prosecutrix told him that her husband was in San Jose at Drake's garage,

but was expected home soon for lunch. The man said he would return later and started to leave. Believing he had gone, she went into the bedroom to feed her baby. As she picked up the child she heard the outside screen door open and someone walk into the house. She jumped up hurriedly and had proceeded as far as the foot of the bed when this same man suddenly appeared at the bedroom door armed with a pistol which he pointed at her and said: "Don't scream or I will shoot you. You know what happened to those other women will happen to you if you make any objections to what I am going to do." In explanation of the foregoing threat it may be stated, as suggested in appellant's brief, that there was considerable excitement and fear in certain parts of the state at this particular time on account of several women having been ravished and brutally murdered in their homes by an unknown criminal. Having these crimes in mind and being terrified by the man's threat, the prosecutrix made no outcry. Thereupon he forced her backward on to the bed and while pressing the pistol against her perpetrated the crime charged. As he left the room he threatened to "come and get" the prosecutrix if he saw "anything in the papers or anything like that." The prosecutrix followed him out of the house on to the porch for the purpose of obtaining the number of the license plate on his automobile which he had parked in the yard, but upon observing her the man turned and pointing the pistol at her exclaimed: "Go back in the house or I will shoot you"; whereupon she stepped back behind the screen door. Just then her husband drove up in an automobile and stopped on the highway at the entrance to their property to look into the mail-box, and while he was doing so this man drove out of the property close to and waved his hand at him. As DiFiori then drove toward the house he saw that his wife was much excited and crying, and she told him what had happened. DiFiori quickly turned his machine around and took up the pursuit of the man, chasing him down the highway into San Jose, where the man followed a circuitous route for some distance and finally disappeared. During the pursuit down the highway and soon after leaving the scene of the crime the two machines were driven past two road employees of the county who were sitting on the side of the highway eating their

lunch. The attention of these men was especially attracted to the first machine on account of the excessive rate of speed it was traveling, one remarking to the other, "That guy is coming like somebody was after him"; and for that reason, as they afterward testified, they carefully observed the driver of the car and his machine, noting, among other things, that the machine bore no rear license plate. They also recognized DiFiori, with whom they were acquainted, as he followed closely behind the first car. The prosecutrix definitely fixed the time of the commission of the crime at ten minutes past 12, having looked at the clock just before she entered the bedroom to feed her baby, and her testimony as to the time was corroborated by that of her husband and of the county employees. The man was described by the witnesses as having worn a dark suit of clothes and a gray hat, and the machine as being a Ford coupe with white wire wheels. The husband also noted when the car passed closely by him at the entrance to his home that the rear license plate was missing and that one of the rear tires was of the make known as a "Royal Cord." Full descriptions of the perpetrator of the crime and of his automobile were furnished the sheriff's office soon after the man disappeared on the streets of San Jose.

The day following the attack appellant was apprehended in a small grocery-store in San Jose owned by appellant's mother-in-law and which appellant and his wife helped to operate, and was positively identified by the prosecutrix and her husband as being the perpetrator of the crime. They were equally positive in their identification of him at the trial. They also identified an automobile belonging to appellant's wife as being the one he was using at the time. It was a Ford coupe equipped with white wire wheels, the rear license plate was missing, and one of the rear wheels was mounted with a "Royal Cord" tire; and appellant admitted when arrested and also at the trial that he used this car in going to lunch about 11 o'clock in the morning, on the day the crime was committed. Moreover, appellant admitted that he owned a dark suit of clothes and a gray hat, the only discrepancy in the description of the clothing being that his suit was made of blue serge material, whereas the prosecutrix described the suit this man was wearing as being dark with a fine white stripe; but owing to the feeling

of terror with which the prosecutrix was seized at the time of the attack, it is not strange that she was mistaken as to a minute description of her assailant's clothing. Soon after his arrest appellant denied ever having owned a pistol, but when told of a statement made by his mother-in-law to the effect that he had owned such a weapon, claimed that some time prior to the date of the crime he had given the pistol to a friend in Oakland. The two county employees also positively identified appellant as being the man who was being pursued down the highway, and they likewise identified his wife's automobile as being the car appellant was at that time driving.

With reference to appellant's alibi, he testified that on the day in question he was in charge of the grocery-store until about 11 o'clock in the morning, when he was relieved from duty by his wife so that he might go to lunch at the home of his mother-in-law, which, the evidence shows, was located not far from the store, but about three miles distant from the home of the prosecutrix; that he drove to his mother-in-law's home in his wife's coupe, and after washing and shaving, sat down to lunch; that after he had eaten he walked back to the store, arriving there about ten or fifteen minutes past 12, and that his wife then went home to lunch, leaving him alone in the store, where he remained the rest of the day. His testimony as to his movements was corroborated generally by that of his wife and her mother. However, at the time of appellant's arrest on the day following the commission of the crime, his mother-in-law stated to a deputy sheriff, according to the latter's testimony, that appellant did not arrive at her home for lunch on the preceding day until after half-past 12; and upon cross-examination she would not deny having made such statement. An attempt was made also on behalf of appellant to prove by a dairy delivery employee that he delivered a quantity of milk to appellant personally at the store on the day in question between the hours of 12 and 1 o'clock, but his testimony was of little value, because he did not remember whether the milk was delivered to appellant or to his wife.

It will be seen from the foregoing statement of the evidence that a substantial conflict exists between the testimony of the four witnesses whose identification of appellant and of the machine he was operating is positive, and the

testimony given by appellant's witnesses in support of his alibi; and, therefore, in that state of the record, the verdict of the jury must be held as controlling on appeal. ■ The jurisdiction of an appellate court in a criminal case, as has been frequently pointed out, is limited by the constitution to a review of questions of law alone, and although the testimony given in a case will be carefully examined for the purpose of ascertaining whether it is legally sufficient to sustain the verdict rendered, the jury's finding will not be disturbed unless it can be said, as a matter of law, that the same is without evidentiary support (8 Cal. Jur. 583; *People* v. *Niino,* 183 Cal. 126 [190 Pac. 626]). Here, as shown, the evidence supporting the verdict consists of the positive identification by four witnesses of appellant and of the automobile he was using at the time; also of a number of incriminating circumstances relating to appellant's clothing and the ownership of the pistol. ■ Even conceding, in view of the asserted alibi, that two reasonable inferences are deducible from the entire evidence, one looking to appellant's guilt and the other to his innocence, the verdict of the jury under such circumstances is conclusive on appeal (*People* v. *Tom Woo,* 181 Cal. 315 [184 Pac. 389]; *People* v. *Meyers,* 39 Cal. App. 244 [178 Pac. 965]; *People* v. *Lewis,* 141 Cal. 543 [75 Pac. 189]), the appellate court having no power to pass upon the credibility of witnesses or to determine the weight to be accorded their testimony (*People* v. *Haydon,* 18 Cal. App. 543 [123 Pac. 1102]).

■ Appellant further contends that the evidence is insufficient to establish the commission of any greater crime than an assault with intent to commit rape; that the court erred in not having instructed the jury with reference to the lesser offense and also in stating to the jury that there was "no serious denial" that the act of rape was committed by someone and for that reason it would not dwell upon the subjects of resistance, force, or violence. We find no merit in any of the points mentioned. Aside from disclosing ample evidence to prove that the crime of rape was committed, the record shows that at no time during trial did appellant claim that such crime was not committed the attempt to exculpate himself from the charge being made solely upon the ground that he was not present at the time or place of its commission. The situation here is

therefore the same as it was in the case of *People* v. *Craib*, 79 Cal. App. 366 [249 Pac. 543], and consequently must be governed by the adverse ruling there stated. ▇ Moreover, appellant neither proposed nor requested the giving of any instructions relating to the lesser crime, and since it appears that the jury was fully and fairly charged upon the law appertaining to all issues of fact which were contested, the failure to instruct upon a subject now deemed essential by appellant was not error in the absence of a request for such instruction (*People* v. *Anthony*, 20 Cal. App. 586 [129 Pac. 968], and cases therein cited).

▇ On stipulation the jury was instructed orally, and in view of appellant's denial that he was present at the time or place of the alleged crime, the court briefly charged the jury upon the subject of an alibi and in part said: "I have already indicated to you what the defense in this case is. The defense of the defendant is an alibi. You may consider the evidence upon the alibi in this case with care; you should scrutinize the evidence with care. You must, however, take into consideration the evidence of the defendant, and the evidence on his behalf, on the subject of an alibi. In connection with the evidence, you may and must consider all the other evidence and circumstances in the case; you must and may take into consideration the direct evidence of four witnesses as to the identity of this defendant. You can take into consideration the automobile that is in evidence, and which you viewed in the jail yard. You may take into consideration the evidence of the husband of the prosecutrix as to the tracks of the automobile that he found in the driveway, and his testimony as to the pursuit of that automobile and the person who drove it. You may take into consideration all of this evidence, *pro* and *con*, bearing upon this question of alibi. Alibi, as you know, is the fact of a person, accused of crime, being at another place and time to that charged in the information." Appellant contends that it was error for the court to refer to an alibi as a defense, and complaint is also made of the court's statement that the jury should scrutinize the evidence with care, claiming that in both respects the instruction was violative of the rules declared in *People* v. *Roberts*, 122 Cal. 377 [55 Pac. 137], and *People* v. *Girotti*, 67 Cal. App. 399 [227 Pac. 936]. We are unable to agree with

140

either of the foregoing contentions. The vice of the instructions considered in the cases cited was in stating to the jury in effect that an alibi when "satisfactorily proven" or when "established" was a good "defense" in law, clearly implying, as the decisions in those cases point out, that an alibi was an affirmative defense which the defendant must establish or prove by a preponderance of evidence before he was entitled to an acquittal. Of course, such is not the law. (*People* v. *Derwin*, 78 Cal. App. 781 [248 Pac. 1029].) And in *People* v. *Girotti*, *supra*, and in the cases upon which the decision therein is founded, the erroneous instructions considered elaborated upon the proposition of a fabricated alibi as a defense, the jury being instructed that "experience has shown, that an alibi as a defense is capable of being and has been occasionally successfully fabricated; and that even when wholly false its detection may be matter of very great difficulty; and that the temptation to resort to this as a spurious defense may be very great, especially in cases of importance—these are considerations attendant upon this defense which call for some special suggestions upon the part of the court"; and the instruction concluded with the statement: "You are to scrutinize the testimony offered in support of an alibi with care, that you may be satisfied that a fabricated defense is not being imposed upon you." The instruction in the present case is not open to the objections which called for reversals in the case cited by appellant, for here the instruction contained no language casting suspicion or distrust upon appellant or upon the testimony relating to his alibi, nor did it in any manner suggest to the jury that the evidence offered in support of his alibi should not be fairly and properly considered; and although, as held in *People* v. *Winters*, 125 Cal. 325 [57 Pac. 1067], an alibi sought to be shown is not strictly speaking a defense, for the reason that the accused is entitled to an acquittal if there be evidence adduced sufficient to raise a reasonable doubt as to the fact, we do not believe, in view of the other instructions given in the present case upon the doctrines of burden of proof, reasonable doubt, and presumption of innocence, that the jury could have been misled by the use of the word "defense" in applying those doctrines.

■ Nor do we think that the instruction under attack is subject to the further criticism made against it by appellant to the effect that it stressed facts adduced by the prosecution in opposition to the alibi, but mentioned none of those proved by appellant in support of the alibi, for the reason that later on and as a part of the same instruction the court stated: ''I am not attempting to repeat all of the testimony bearing upon the subject of alibi in this case but I am commending to you and saying to you that it is your duty to consider all of the evidence and circumstances in this case bearing upon the subject of the alibi, because that is the principal question for you to determine . . . '' Furthermore, if appellant deemed it advisable to have an instruction given embodying the facts upon which he relied in support of his alibi he should have proposed such an instruction, and having failed to do so we think he is not in a position now to complain.

■ The motion for a new trial was based mainly upon an affidavit made by the dairy delivery employee wherein he sought to correct part of his testimony given at the trial to the effect that he had not written a memorandum reading ''12 to 12:30'' on the milk tag which was delivered with the milk on the day of the commission of the offense; and because of the facts averred in this affidavit it is claimed that the court abused its discretion in denying appellant's motion for a new trial. The question as to whether the memorandum mentioned was written on said tag by the witness or by someone else is not of great importance for the reason that the witness was unable to remember to whom the milk was delivered; and in any event, a motion for a new trial is addressed to the sound discretion of the trial court, the exercise of which includes the power to determine the truth of the matters on which such motion is based; and its decision thereon will not be disturbed on appeal unless it appears that there has been a clear and unmistakable abuse in the exercise of such discretion (*People* v. *Byrne,* 160 Cal. 217 [116 Pac. 521]; *People* v. *Weber,* 149 Cal. 525 [86 Pac. 671]). ■ In view of the equivocal manner in which the witness gave his testimony and the minor importance to be attached to the memorandum, the trial court was clearly justified in refusing to grant a new trial upon the strength of said affidavit.

After reviewing the entire record we are unable to say that appellant has not had a fair trial or that the verdict rendered against him has resulted in a miscarriage of justice. The judgment and order appealed from are therefore affirmed.

Tyler, P. J., and Cashin, J., concurred.