[Crim. No. 3178. Second Appellate District, Division Two.—December 8, 1939.]

THE PEOPLE, Respondent, v. TELFORD COOPER, Appellant.

Morris Lavine for Appellant.

Earl Warren, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Respondent.

WOOD, J.—Defendant was charged in each of two counts with the crime of robbery and in each count it was charged that he had previously been convicted of the crime of rape and had served therefor a term of imprisonment in the state prison. Defendant admitted the prior conviction but entered pleas of not guilty to the charges of robbery. A jury returned verdicts of guilty on both counts ánd defendant appeals from the judgments thereafter pronounced.

Defendant now contends that the district attorney was guilty of misconduct and that the trial court erred in its rulings on the admission of evidence. The record discloses certain errors but in our judgment they are not of such character as to justify a reversal in view of the evidence presented by the prosecution. We therefore set forth the most important evidence presented to show the guilt of defendant.

The complaining witness referred to in count I of the information, C. J. Lewis, testified that he was on January 20, 1938, the manager of a market operated by the Safeway Stores at 6355 South Broadway in the city of Los Angeles. At about 6 o'clock in the evening the witness was closing the doors of the market when defendant entered. After he finished closing the doors and was getting a breadbox Mr. Lewis saw defendant standing in front of the cash register. He left the box and asked defendant if there was something

he wanted, to which defendant replied "two camels". Mr. Lewis then went to the check stand to get the cigarettes and while he was reaching for them defendant moved around toward the door. When the witness looked up defendant produced a revolver and ordered the witness to get money for him. In response to this demand the witness took a paper bag from under the check stand, put money in it and handed it to defendant. While this was being done defendant unlatched the door to the market, holding it open so that he could escape. During all of this time defendant was facing the witness. At the trial Mr. Lewis was shown a revolver which had been received in evidence. He testified that it was similar in appearance to the revolver which defendant held at the time of the robbery. A cap and overcoat were exhibited at the trial and Mr. Lewis testified that they were similar in appearance to those worn by defendant at the time of the robbery. These garments had been found by officers in a vacant lot to which they had been directed.

John Sullivan, the complaining witness referred to in count II, testified that on January 22, 1938, he was employed as a salesman for the Safeway Stores in Los Angeles, the store where he was employed being located at 5975 South Hoover Street. At about 6:15 P. M. the witness was standing in the middle of the store in front of the butcher's counter, at which time the manager of the store was going to the rear with some empty bottles. The witness volunteered to take the bottles back but the manager indicated that he would do it himself. When the witness turned around he saw defendant standing by the check stand so he walked to the check stand and asked what he could get for him. To this defendant responded by shoving a bag to the witness and demanding that he "fill it up". The transcript shows the following questions and answers: "A. He said 'Fill it up.' I says, 'Fill what up?' He shoved the bag over and I saw a gun. I hollered then, 'Oh, Johnnie!' That was the manager. On account of my being the clerk I wanted him to see I was held up. So he turned around and this man pointed the gun and said, 'Turn the other way.' So in the meantime I took the bag and filled it up with the money that was in the cash register. Q. How much did you put in the bag? A. $99.00, they tell me. Q. Will you tell me where with reference to the man that held you up, how

close did you get to him, how far away was he? A. Oh, just a couple of feet.'' Mr. Sullivan also identified the revolver in evidence as being similar to the one with which defendant was armed at the time of the robbery. He testified that the cap and overcoat which were exhibited at the trial were similar to the cap and overcoat worn by defendant at the time of the robbery.

John Winn, the manager of the market at 5975 South Hoover Street, testified that on the evening of January 22, 1938, as he was taking some empty bottles to the back room he heard the clerk, Sullivan, call and on turning around he saw defendant standing with a gun at the counter holding up Sullivan. Defendant ordered the witness to turn around but he did not do so for a minute or a minute and a half. The witness identified the cap and overcoat exhibited in court as similar to the ones worn by defendant at the time of the robbery.

William Caskey, a meat cutter in the employ of the market at 5975 South Hoover Street, testified that on the evening of the robbery he had stepped to the back room of the store to attend to some business and when he started to return to the front of the store he heard the witness Sullivan call ''John''. At that time the witness pushed the swinging door separating the back room from the front part of the store partially open and saw defendant in the act of robbing Sullivan. The witness also heard a motor running and tried to go out through the back door to get its number. He found the back door barred and when he returned Sullivan had been released. The witness thereupon went to the side of the store and saw a faded green Chevrolet automobile about two blocks away. It was shown that the witness Haigh, to whom reference will hereafter be made, was the owner of such a car. This witness also testified that the cap and overcoat exhibited in court were similar to the clothing worn by defendant at the time of the robbery.

Harold Crawford, a clerk in a sporting goods store located on West Fourth Street, testified that he had sold the revolver admitted in evidence to defendant on January 19, 1938, and that at that time defendant told the witness that the gun was being purchased for someone else. The witness informed defendant that the other man would have to get the revolver and sign for it in his own name. When so informed de-

fendant said he would sign for it, but he signed the name of William Haigh. The weapon was held at the store for twenty-four hours in accordance with required procedure and thereafter a person identified in court as William Haigh called for it. Before leaving the store defendant procured five shells for the revolver in question and took them with him.

Police officer Winter testified that William Haigh had signed a statement involving himself and defendant in the commission of the robberies which was presented to defendant to read and that defendant had stated, "I don't know anything about it except buying the gun. . . . I will admit I bought the gun." The statement itself was admitted in evidence on rebuttal. The defendant testified that when Officer Hudson showed him the statement signed by Haigh and asked him, "What do you think about this?" he, the defendant, had replied: "If the man signed this, which I don't think he did, he must be crazy." The officer then asked, "Don't you know anything about it?" and the defendant replied, "Absolutely not, other than that I did get the gun for him. I went down and picked the gun out and paid for it. Outside of that I know nothing about it."

Defendant now contends that the trial court erred in its rulings on the admission of evidence. There is force in his argument that it was improper for the court to permit the district attorney to show that Haigh had first met defendant in the county jail. The place of their meeting was not material. Complaint is also made of the ruling of the court in admitting in evidence the written statement signed by Haigh involving defendant and Haigh in the commission of the two crimes for which defendant was on trial. The district attorney had presented Haigh as a witness but Haigh had refused to testify concerning the commission of the crimes on the ground that his answers would tend to incriminate him. The court at first refused to admit Haigh's written statement in evidence. Thereafter defendant became a witness and gave testimony concerning his answers made to Officer Hudson. The court thereupon permitted the entire statement to be read in evidence, apparently on the theory that "when a detached act, declaration, conversation or writing is given in evidence, any other act, declaration, conversation or writing, which is necessary to make it understood,

may also be given in evidence''. (Code Civ. Proc., sec. 1854.) The declaration of defendant was not of such a nature that ''to make it understood'' it was necessary to introduce the entire statement of Haigh in evidence. ■ Neither can the introduction of the entire statement be justified on the ground that when it was presented to defendant he made certain incriminatory declarations in regard to it.

■ Defendant charges misconduct on the part of the district attorney in asking the witness Haigh if on January 22, 1938, he and defendant went ''into another store where there was a man by the name of Herman Runge, also a Safeway store, located on South Western Avenue''. The question was interrupted by an objection from counsel for the defense. The court overruled the objection on the ground that the question was preliminary, but the witness refused to answer. We cannot see how the question could have been preliminary. It should not have been propounded.

■ Defendant argues that the district attorney was guilty of misconduct in making certain remarks during his address to the jury. The prosecutor said: ''The way I have always conceived my position or job, or whatever you want to call it, is that I am here to present the facts and the evidence. Now, if those facts and the evidence and the law warrant me as an individual to ask a jury to bring in a verdict of guilty based on those things alone, I am going to do it; if I am satisfied in my own mind from the evidence, I am going to ask the jury to find a man guilty. In any case if based on the evidence and the law there is a reasonable doubt, I am not going to ask any jury to convict. I have done that consistently. I am going to do it.'' These remarks are subject to criticism. The prosecutor appeared as a public official and should not have attempted to argue to the jury as an individual rather than in his official capacity. Neither the district attorney nor the attorney for the defense should add the weight of his personal opinion to the evidence in support of his cause. It is fairly apparent, however, that the district attorney based his opinion concerning defendant's guilt upon the evidence.

It is to be noted that in neither of the instances just referred to did counsel for defendant assign misconduct on the part of the district attorney and ask the court to instruct the jury to disregard it. Defendant is not now in position

to take advantage of these errors on the part of the prosecutor. (*People* v. *McAfee*, 82 Cal. App. 389 [255 Pac. 839].)

■ Defendant complains that the district attorney was guilty of misconduct in making the following remarks during his address to the jury: "Now, I say that Mr. Haigh was found guilty of one count, the count where he actually perpetrated by going in himself with the gun, he was found guilty of that. We did not see fit to prosecute him on two additional counts. If we wanted to cause the taxpayers to spend the money and go through another trial we could do it, yes. This defendant is on trial for two counts where he went in and actually committed the robbery. Now, if we wanted to pour it on to Mr. Haigh he could be brought back here and tried as an aider and abetter on these two counts for which this defendant is here on trial, and Mr. Hamilton seems to think from his remarks that we see only one side, that we are trying to pour it on, and in view of those remarks I think it is only fair to point it out to you that if we wanted to pour it on so far as this defendant is concerned, in addition to the charges for which he is now on trial, there could be seven felony counts filed against him in addition to the two charges of robbery." In this instance counsel for defendant assigned misconduct and the court promptly and properly instructed the jury to disregard the improper statement of the prosecutor.

■ As has been hereinabove indicated, errors were committed during the course of the trial, but under section 4½ of article VI of the Constitution of California we are prohibited from reversing the judgments unless after an examination of the entire cause, including the evidence, we shall be of the opinion that the errors have resulted in a miscarriage of justice. The prosecution presented proof of the guilt of defendant of two separate robberies at different stores. Defendant was recognized by four different witnesses at these two robberies, witnesses who had ample opportunity to observe him. Defendant admitted that he purchased the weapon used in the robberies. These facts, together with other evidence above mentioned which need not be here repeated, present such overwhelming proof of defendant's guilt that it is apparent that it is not reasonably probable that verdicts other than guilty would have been returned by the

jury if the errors had not been committed. We are satisfied that there has been no miscarriage of justice.

The judgments are affirmed.

Moore, P. J., concurred.

McCOMB, J., Dissenting.—I dissent. In my opinion the errors which the majority opinion concedes were made by the trial court are prejudicial and do not fall within the purview of article VI, section 4½, of the Constitution of California. Therefore, I conclude that the judgments should be reversed.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 4, 1940.

Appellant's petition to recall *remittitur* and for a rehearing was denied by the District Court of Appeal on January 18, 1940; and his petition to recall *remittitur* and to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 15, 1940.