[Crim. No. 822.   Fourth Dist.   Sept. 29, 1950.]

THE PEOPLE, Respondent, v. TED JOHNSON, Appellant.

Morris B. Chain and Bradley & Bradley for Appellant.

Fred N. Howser, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

GRIFFIN, Acting P. J.—It is charged in an information containing four counts, first, that on December 12, 1949, defendant unlawfully committed the crime of grand theft by voluntarily taking a trailer load of cotton belonging to one W. H. Richards; second, that he unlawfully took a four-wheel cotton trailer belonging to Kenneth Richards, without his consent; and the third and fourth counts charged respectively that on November 8, 1949, defendant unlawfully took a trailer

load of cotton and also a trailer from one Robert Hamilton.

A trial by jury resulted in a conviction on the first two counts and a verdict of not guilty on a third and fourth count. Defendant appealed from the judgment pronounced. He first challenges the sufficiency of the evidence to support the verdict.

On December 12, the prosecuting witness, Richards, a cotton raiser who resided in Dinuba, was picking cotton by machine at a ranch which was located about a mile south and a little west of the ranch owned by defendant at Yettem. He left his field about 6 o'clock in the evening, after dark, and at the time of his departure there were three trailer loads of cotton in his field. When he returned the next morning about 9 o'clock, he discovered that one of the trailers was gone. It had contained a normal load of cotton (about 7,600 pounds or about 7 bales, approximately, valued at $900). The cotton was owned by Richards, and the missing trailer was owned by a cousin of his. Richards summoned the sheriff. At the location where the trailer had been left the previous evening they found tire tracks with seven grooves in a saw-tooth pattern. Similar tracks were noted the same day at the same place by others. One rear tire of the missing trailer had a diamond-type tread with a smooth place in the center. The other rear tire had a "W" type of tread with a smooth place in the center. The tread marks of these rear tires appeared at the scene where the trailer had been loaded the previous evening. These tire tracks indicated that the vehicle, bearing the seven-groove saw-tooth tread tires, had backed up to the trailer. It was hitched onto it and then hauled from the Richards property to the near-by county oiled road. Defendant's ranch adjoined that of Richards. To the east of defendant's home was a road running in a north and south direction and parallel to defendant's fields, which fields were divided into parcels by a ditch. Eighty acres of the defendant's land was denominated the "south 80 acres." The north 15 acres adjoined defendant's house. A witness Hamilton, who had previously lost a trailer load of cotton, testified that when he learned of the loss by the witness Richards, he chartered an airplane and flew over the area looking for the abandoned trailer and a new cotton stock pile, because he knew stock-piling was not necessary at that time of the year because the gin was "ginned up" within 24 hours. He testified that he was unable to locate the type of trailer described by Richards but he crisscrossed over the

Yettem area to cover the Johnson families' ranches; that he located what he thought was an abandoned trailer and what looked like an old stock pile near it; that after further search he noticed, on the ranch of defendant Ted Johnson, a full cotton trailer in front of his house and an empty trailer on the road in front of it; that particularly in the 80-acre field, he noticed in a cleared area, evidence of recent stock piling; that it stood out very plainly from the air as though it was painted white because the other stock piles were a dull grey due to rains which occurred about December 7; that he landed at the airport and reported his findings to the deputy sheriff. The following day he accompanied the deputy sheriffs, constable, and other interested parties to the ranch operated by defendant. The Richards trailer was found abandoned about 10 miles north of Yettem on the paved highway. It had mud on the tires and under the bed of the trailer. The racks were laid on top and tied down. One of them appeared to have been pried off with a bar or an automobile jack, which cut into the timbers and caused them to splinter and shatter and break off some of the wood. The tires from this trailer were offered in evidence. Sketches, photographs and plaster casts of tire tracks found not only upon the Richards property but upon the property owned by defendant, were made and received in evidence. One inverted "W" track · was found between the defendant's house and the canal where the tire had passed through soft mud. In another place was found the indentation of the "diamond" marked tread similar to one of the tires received in evidence. A similar mark was found in the cleared area on the south 80 acres. Tractor tire marks apparently had pretty well obliterated all tracks surrounding that area. This cleared area gave evidence of the fact that a short time previous to the officers' visit to defendant's ranch a trailer load of cotton had been dumped from the Richards trailer onto the ground and had been reloaded onto another trailer and hauled to the gin. A fresh tire mark, similar to those received in evidence, was found under the remains of the cotton stack left upon the ground. One of the officers discovered pieces of wood missing from the sideboards of the Richards trailer at that spot. Samples of the wood particles were sent to the State Division of Criminal Identification and Investigation for examination. Soil samples were also taken from the mud on the tires and body of the trailer as well as those of Tom Johnson's truck. This truck

was owned by defendant's father, and tire marks similar to the tires on that truck were found on the Richards' ranch as well as on defendant's ranch, particularly at the cleared spot indicated on the south 80 acres. The result of this examination showed that the wood particles found on defendant's ranch and those on the Richards trailer were identical and that these parts fitted together perfectly. The result of the soil analysis indicated that the mud on the trailer and the Johnson truck were similar and that the soil samples taken from the Richards ranch and that taken from the mud on the truck and trailer were dissimilar.

Defendant's brother, who testified on behalf of the People, stated that on December 13, he worked for his brother on his brother's ranch; that he helped him load the cotton off the ground into a trailer from the cleared area; that his other brother Unica, and Paskell January also helped; that they started to load it with hayforks but later defendant went home and brought back the picking machine and loaded it with that; that one trailer and a part of another were thus loaded; that the trailer was then hauled out of the field with a tractor and left in front of defendant's house; that in the evening of the day previous to the loading, defendant Johnson told him that he wanted him to help him load cotton the next day. The loaded trailer, containing about 6,006 pounds, was hauled to the gin by defendant's father, Tom Johnson. The other trailer contained about 3½ bales of cotton, which defendant took to the gin. An investigation of the 80 acres on defendant's south field showed that only 27 rows had been picked between the time of the rain and the time when the examination was made. Estimates of the yield from these 27 rows varied from a bale and a half suggested by one witness, to 3½ bales suggested by a defense witness, and all cotton picked in that area had been previously taken to the gin. Records of the gin were received in evidence and showed that defendant delivered 4,570 pounds or 3 bales on December 12, *9580* pounds or 7 bales on *December 13*, and on the 27th of December, 4 bales; January 5, 1950, 4 bales; January 7, 3 bales; and January 9, 3 bales. The manager of the gin where the defendant took his cotton testified that he had previously estimated defendant's total yield as 80 bales and that he had, up to that time, received 97 bales. However, he did testify that his estimate was only an estimate and there could possibly be this much variance. There was evidence

that about December 11, defendant returned a cotton loader, of which he was a part owner, to his neighbor, stating that he was through with it. Defendant also admitted that he was working in this field in the late evening of December 12 and that he dug holes in the ground for the purpose of setting a trailer in them to make it easier to load. Defendant also admitted having a conversation with Richards on the evening of December 13. Although he told Richards nothing about it, he stated he had previously heard of the theft of the cotton.

There is evidence that the officers made search of the automobiles and trucks in the vicinity of Yettem for tires similar to those which were on the Johnson truck and were unable to find any of that particular type and marking. One of the officers at the gin, after hearing of the theft, also made investigation of trucks, over a period of time, coming into the gin for unloading purposes, and found no trucks having tires of this particular design.

Defendant's answer to the charge was that after working late in the field that evening, he went home, had dinner, went to a near-by grocery store with his wife, and then visited a neighbor until about 11 p. m.; that at that time he and his wife returned home and retired. He denied leaving the house that night. He also denied taking the trailer or the cotton or having any part in such taking. He produced several corroborating alibi witnesses as well as a group of character witnesses who testified as to his general reputation in the community. He also produced the testimony of his brothers endeavoring to corroborate his story in reference to his cotton picking activities for the previous week, which varied somewhat from the testimony produced by the People's witnesses. There was evidence that automobile tire tracks similar to the tires on Tom Johnson's truck were found on the property of *Mr. Hamilton* at the time he lost his cotton trailer and load of cotton.

The force of defendant's argument is that since the prosecution did not produce any direct evidence to connect him with the commission of the alleged offenses, that since no one saw him at or in the vicinity of the cotton that was supposedly stolen, and that since no one saw him in possession of the trailer that was taken, the prosecution failed to produce sufficient evidence upon which to convict him; that since defendant established that he did not deliver cotton to the gin in any unusual quantity, that since he showed that he

was picking cotton on his own premises at the time the theft occurred, and that he had nothing whatever to do with the cotton or trailer of the complaining witnesses, and since all of the People's testimony was "buttressed" by the testimony of numerous character witnesses who testified to the good character of defendant, and since the prosecution failed to rebut their testimony, the defendant more than overcame any indication of guilt on his part that may have been established by the circumstances presented, citing *People* v. *Flores,* 58 Cal.App.2d 764 [137 P.2d 767]; and *State* v. *Henry,* 66 Idaho 60 [154 P.2d 184].

The evidence is mainly circumstantial and must be examined in the light of the well established rules on appeal. We must assume in favor of the verdict the existence of every fact which the jury could reasonably have deduced from the evidence and then determine whether such facts are sufficient to support the verdict. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

The evidence clearly establishes that the complaining witness's trailer and load of cotton were stolen sometime after dark on the evening of December 12, or the morning of December 13. Counsel for defendant concedes this fact. The evidence sufficiently establishes that it was Tom Johnson's truck that hauled the trailer and cotton onto the defendant's premises, and that the same trailer was unloaded there. Whether defendant Ted Johnson was actually driving the truck is not clearly determinable. There is evidence that defendant was, in fact, late that evening, working in the south 80 acres near the complaining witness's ranch and that he was the guiding hand in supervising the employment of persons for the purpose of loading stock piled cotton into a different trailer the following morning. The cotton so loaded was taken by defendant's father by means of the same truck, the following day, to the cotton gin, and the proceeds were credited to defendant. The jury was justified in believing that if defendant did not actually drive the truck from the complaining witness's premises he did in fact aid and abet another or others in the commission of that offense. The finding of the several pieces of sideboard of the complaining witness's truck on defendant's property at the place indicated was strong evidence that the contents of the complaining witness's truck were removed to defendant's premises, and the circumstances surrounding the disposition of the cotton and the trailer thereafter point directly to the defend-

ant Ted Johnson as having committed the offenses charged or aided and abetted in their commission. The jury was the one to determine the question of the veracity of the testimony of defendant and his witnesses, as opposed to the circumstances related and as to whether or not defendant had sufficiently established an alibi. (*People* v. *Ash,* 88 Cal.App.2d 819, 826 [199 P.2d 711]; *People* v. *Egan,* 77 Cal.App. 279, 281 [246 P. 337].) The jury might well have believed that the defendant committed or aided and abetted in the commission of the crimes notwithstanding the testimony of the character witnesses. (*People* v. *French,* 137 Cal. 218 [69 P. 1063].)

■ The next complaint pertains to the giving of certain claimed erroneous instructions pertaining to aiding and abetting. Instructions were given embodying Penal Code, sections 31 and 32, as to who are principals and who are accessories, together with a general instruction to the effect that the fact that others "have violated the law with impunity is no defense and if you believe beyond a reasonable doubt that Ted Johnson and others who are not before the court took and carried away the personal property of . . ." W. H. Richards, or that they "drove and moved the trailer of Kenneth Richards, without the consent of the owner thereof, and with intent to deprive the owner thereof of the said vehicle, you must find the defendant, Ted Johnson, guilty as alleged . . ."

It is defendant's contention that the trial court should not have instructed the jury on aiding and abetting because there was no evidence to show he aided or abetted anyone. There is no merit to this contention for the reasons heretofore expressed. (*People* v. *Latona,* 2 Cal.2d 714, 726 [43 P.2d 260]; *People* v. *Burke,* 18 Cal.App. 72, 104 [122 P. 435].) The jury was fully instructed as to the quantum of evidence necessary to be established before defendant could be convicted.

■ It is claimed that one of the instructions which states that "The fact that others have violated the law" with impunity is no defense, is in effect a statement by the trial judge to the jury "as a fact, that someone has violated the law and has told the jury that as an undisputed fact there has been a theft of cotton and that someone other than defendant participated in that theft." The evidence is undisputed that someone did violate the law and did take and carry away

the personal property of the complaining witness. Counsel for defendant, not only in his brief but in his argument before the jury, conceded this fact but denied that defendant Ted Johnson had any part in it. The remaining portion of that instruction clarifies the former portion of it. Under the facts established no error was committed. The instruction must be viewed as a whole. (*People* v. *Garnier*, 95 Cal. App.2d 489, 499, 500 [213 P.2d 111]; *People* v. *Weatherford*, 87 Cal.App.2d 275, 278 [196 P.2d 832].)

■ It is next claimed that the trial court committed error in instructing the jury in the language of Instruction No. 235 CALJIC, pp. 192-193, on the law pertaining to the possession of stolen property. The instruction told the jury that the mere possession of stolen property unexplained by the person having possession, is not sufficient to justify a conviction. However, it may be a circumstance to be considered in connection with other evidence in determining the question of innocence or guilt. Defendant's complaint of this instruction is that there is no evidence showing that the defendant ever had possession of the stolen property and therefore such an instruction should not have been given. Since it has been determined that there is sufficient circumstantial evidence to show that the stolen property was on defendant's ranch and was apparently under his dominion and control, and that the cotton was subsequently loaded by him and taken to the gin mill by his authority to be ginned for him, soon after the theft, this instruction was proper. (*People* v. *Taylor*, 4 Cal. App.2d 214 [40 P.2d 870].) This conclusion is not contrary to the holding in *People* v. *Hurley*, 60 Cal. 74 [44 Am.Rep. 55], cited by defendant.

■ The next complaint is that since the standard instruction was given to the effect that it was not necessary that there should exist an intent to violate the law or to do a wrong because criminal intent exists whenever a person does that which the law declares to be a crime, such instruction is contrary to an instruction given to the effect that in every crime there must exist a union of act and intent, citing *People* v. *Gherna*, 80 Cal.App.2d 519, 524 [182 P.2d 331]. We see no merit to this complaint. Defendant does not deny that the jury was instructed on the necessity of finding a specific intent in order to convict. This requirement was covered by several of the given instructions. Comparable instructions were given in *People* v. *Raffington*, 98 Cal.App.2d 455, 462 [220 P.2d

967]. A similar contention was there made. The court held that the instructions were proper.

Defendant argues that a violation of section 499b of the Penal Code was an included offense under a charge of violation of Vehicle Code section 503, and that it was the duty of the trial judge, on his own motion, to have instructed the jury of this fact. No authority is cited in support of this argument. The issue before the jury was whether or not the defendant committed the offenses charged or participated therein, and on this issue the jury was fully instructed. In the absence of a request for an instruction to this effect, the defendant is not in any position to complain for the first time on appeal. (*People* v. *Ross*, 89 Cal.App. 132, 139 [264 P. 314] ; *People* v. *Owens*, 79 Cal.App.2d 290, 300 [179 P.2d 401].) Furthermore, under the evidence, it can scarcely be contended that the defendant took the trailer within the meaning of the so-called ''joy-ride statute,'' (Pen. Code, § 499b). (See *People* v. *Orona*, 72 Cal.App.2d 478 [164 P.2d 769].)

Then follows the statement that prejudicial error was committed by the court in failing and refusing to submit to the jury verdicts on the offense of being an accessory after the fact, and on the offense of receiving stolen property, after having been instructed as to those offenses. The defendant was not charged with the crime of being an accessory after the fact nor was he charged with the crime of receiving stolen property and accordingly, not being an included offense within the charge, there was no duty upon the trial court to submit to the jury forms of verdict as to these offenses. (Pen. Code, §§ 971, 972, 7 Cal.Jur. p. 891, § 40 ; *People* v. *Stakem*, 40 Cal. 599 ; *People* v. *Hawkins*, 34 Cal. 181; Pen. Code, § 496.) Furthermore, the instruction on the subject of accessory after the fact was given in connection with section 31, as well as sections 971 and 972 of the Penal Code, in defining who are the principals concerned in the commission of a crime and whether or not they directly committed the act constituting the offense or aided or abetted in its commission or, not being present, have advised or encouraged its commission. We find no instruction given by the court, and counsel for defendant has not called our attention to any instruction, in which the court defined the offense of receiving stolen property as denounced by Penal Code, section 496, or which would in anywise indicate that the jury could find the defendant guilty of such an offense.

Prejudicial error is claimed by reason of the alleged misconduct of the district attorney in his argument to the jury. During the course of the argument the prosecutor stated that the mere filing of an information did not make the defendant guilty and that he is presumed to be innocent "but on the other hand, both the sheriff's office and the district attorney's office seem to have spent a lot of time on this case and they seem to think that they have a guilty man; and they seem to think the guilty man is Ted Johnson." Defendant cites 8 Cal.Jur. 268, § 329; *People* v. *Edgar*, 34 Cal.App. 459, 467 [167 P. 891]; and *People* v. *Cooper*, 36 Cal.App. 2d 6, 12 [96 P.2d 1012], wherein it is stated that the prosecutor should not attempt to argue to the jury as an individual rather than in his official capacity, and that he should not add the weight of his personal opinion to the evidence in support of his cause. The record shows that Tom Johnson, defendant's father, and owner of the truck here involved, was not called as a witness on behalf of the defendant to testify as to either his whereabouts or the whereabouts of the truck on this particular evening. In summing up the case, the district attorney remarked: "Incidentally, where is this Tom Johnson? We hear about Tom Johnson all during the trial, but Tom Johnson never took the stand in favor of his son. I wonder why not? . . . I wonder if it could be that Tom Johnson fears the very fate, Paskell January, impeachment. . . . Do you suppose Mr. Smee, in the investigating of this case, along with the deputy sheriffs, would not have taken a statement from Tom Johnson? . . . He is the owner of those tires. He has been in and out of this thing all the time. . . . Maybe Tom Johnson is so afraid of making a statement that he would incriminate himself. . . ." It is claimed that the inflammatory and prejudicial nature of the above arguments is self evident; that they are unfounded upon any testimony, and are remarks that are not based on any evidence in the case; that a comment on the failure of any certain witness to appear is prejudicial error, particularly where such witness was equally available to either party, citing *People* v. *Frank*, 129 Cal.App. 119, 125 [18 P.2d 719]; and *People* v. *Piazza*, 84 Cal.App. 58, 83 [257 P. 592].

In discussing the production by the defendant of a goodly number of character witnesses, the prosecutor stated: "Alger Hiss had some character witnesses . . . I think that the character witnesses that Alger Hiss put on were of considerable

more prominence than those this defendant put on. Yes, sir, Hiss brought two United States Supreme Court Justices in to testify to his character, and as to his truth, . . . and that in itself didn't stop Alger Hiss from being convicted. . . . As a matter of fact, Harry Bridges was convicted by a jury recently. He brought in some character witnesses and I think he brought in a Catholic Priest as a character witness and that didn't stop the jury one bit. They still found him guilty. The mere fact that a number of people—and I certainly am not casting any aspersions on them at all, I am sure they are telling Ted Johnson's reputation up until now has been good. Neither am I saying that the Supreme Court Justices that appeared for Alger Hiss were in any way misstating the truth, because apparently in the past Alger Hiss did have a good reputation.''

It is claimed that it was prejudicial misconduct on the part of the prosecuting attorney to refer to the Alger Hiss trial and the Harry Bridges trial in a repeated attempt to depreciate the force of the testimony of the defendant's character witnesses; that it was debatable whether the facts of these cases might have been matters of common knowledge and that the average layman might not even be aware that character witnesses were put on the stand in either of these cases. Counsel for defendant concedes that he did not object to nor did he move to strike the argument of counsel to the jury pertaining to the matters set forth and did not ask the court to admonish the district attorney in reference thereto. He claims that this failure to object was not vital because the misconduct was apparent and sufficient to cause a possible miscarriage of justice, citing *People* v. *Hadley*, 84 Cal.App.2d 687, 692 [191 P.2d 517] ; *People* v. *De Vries*, 52 Cal.App. 705, 710 [199 P. 867] ; and *People* v. *Gilliland*, 39 Cal.App.2d 250, 264 [103 P.2d 179].

As to the first claimed error regarding the expression of opinion that the sheriff's office and district attorney's office *seemed* to think that Ted Johnson was the guilty man, the defendant is segregating a small portion of the record from its context. When that portion is examined in relation to the entire argument it is clear that he was basing his remarks upon an analysis of the evidence in the case. It did not therefore constitute prejudicial error, particularly where such statement was not objected to nor assigned as error. (*People* v. *Owens*, 11 Cal.App.2d 724 [54 P.2d 728].) It does not

appear from the statement that the jury could have been misled into accepting any substitute for evidence. In the Cooper case, relied upon by defendant, no objection was made to the argument, and the court affirmed the judgment of conviction. In the Edgar case, *supra,* strenuous objection was made and the judgment of conviction was reversed but the court pointed out that the misconduct of the district attorney in that case was objected to and the prosecutor continued such misconduct in spite of the warnings of the trial court. This charge cannot be laid at the door of the district attorney in the instant case.

As to the prosecutor's reference to the Alger Hiss and Harry Bridges trials and as to the character witnesses appearing therein, it might be properly questioned whether all of the facts of those cases were of such notoriety that they became commonplace and within the wide range of discussion, illustration and augmentation of counsel, but it can hardly be said that the trials, some of the claimed facts and the results were not generally known or of common knowledge. The gist of this portion of the prosecution's argument was to illustrate that persons who are of good character, as shown by the best intended character witnesses, may still be found guilty if the evidence is present to show the commission by them of the crime charged. No objection was made to this illustration or discussion at the time and the court was not asked to admonish the jury or the prosecuting attorney in respect thereto. It is the general rule that in the argument of the district attorney before the jury, the range of discussion, illustration and argument is properly very wide, and matters of common knowledge and historical facts may be referred to and interwoven in such argument. (*People* v. *Burke,* 18 Cal.App. 72 [122 P. 435].) Under the circumstances related and in the absence of an objection to the argument, we conclude that the statement did not constitute prejudicial error. (*People* v. *Stembridge, ante,* p. 15 [221 P.2d 212]; *People* v. *Agnew,* 16 Cal.2d 655 [107 P.2d 601]; *People* v. *DuBois,* 16 Cal.App.2d 81, 87 [60 P.2d 190]; and cases there cited.)

These same authorities would be cited and the same conclusion must be reached in reference to the prosecutor's statement in reference to the failure of Tom Johnson, father of defendant, to testify in defendant's behalf. It must be remembered that throughout the trial the prosecution was insisting that either defendant himself or someone other than

defendant drove the truck and hauled away the trailer and its contents onto the defendant's premises and that defendant and his father later conveyed them to the cotton gin. It is quite apparent that neither the prosecution nor the defense was obliged to call Tom Johnson as his own witness. The court instructed the jury that neither the prosecution nor the defense was required to call as witnesses all persons who were shown to be present at any of the events involved in the evidence or who might appear to have some knowledge of the matters in question in the trial. It does appear unusual that the defendant, under the circumstances related, preferred not to call him as his witness. It might have been error for the district attorney to discuss unfavorably the failure of the accused to produce witnesses, and to make other insinuations resulting from such failure, when the witness was equally available to the state. (*People* v. *Harris*, 80 Cal.App. 328 [251 P. 823] ; *People* v. *Piazza*, 84 Cal.App. 58 [257 P. 592].) We do not conclude that it was prejudicial misconduct, particularly where counsel for defendant endeavored to explain to the jury the reason for his failure to call that witness and predicated it upon the fact that he did not care to embarrass the witness or the jury by reason of some facial impediment which the witness possessed, and where counsel made no assignment of misconduct in relation to the prosecutor's argument and did not ask the court to admonish the jury in respect thereto. Counsel for defendant actually undertook to answer the prosecutor's argument, indicating thereby that at the time, there was no thought in his mind that the prosecutor's remarks were not proper.

The reason for the rule requiring assignment of misconduct and a request that the jury be instructed to disregard it is that the trial court must be given the opportunity to obviate the harmful results, if any, by appropriate instructions to the jury. Furthermore, the trial judge had an opportunity to consider the alleged misconduct on the motion for new trial and his rejection of the contention indicates the lack of prejudice to the defendant. (*People* v. *Macias*, 77 Cal.App.2d 71, 89 [174 P.2d 895] ; *People* v. *Sarazzawaski*, 27 Cal.2d 7, 15 [161 P.2d 934].)

Defendant cites the case of *People* v. *Ponce*, 96 Cal.App.2d 327, 331 [215 P.2d 75], for the proposition that it was error for the trial judge to fail to define the words "aid and abet" to a greater extent than defined by the proffered instructions.

The court instructed the jury in the exact language of sections 31 and 32 of the Penal Code to the effect that if it was convinced, beyond a reasonable doubt, that defendant, either actively and personally committed the offense charged or aided *and abetted* any other person or persons to commit that offense, then it must find the defendant guilty. In another instruction embodying the provisions of sections 971 and 972 of the Penal Code, the jury was told that all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or *aid and abet* in its commission, though not present, shall be tried as principals. This was followed with an instruction that in every crime there must exist a union of act and intent, and that criminal intent exists wherever a person intentionally does that which the law declares to be a crime.

Under the instructions given then, the jury was, in effect, told that if defendant *aided and abetted* in the commission of the crime, before he could be found guilty of such crime, there must exist a union of act and intent to commit such crime.

*People* v. *Ponce*, 96 Cal.App.2d 327, 331 [215 P.2d 75], relied upon by defendant, was a case .construing sections 209 and 210 of the Penal Code, which use the term "aid *or* abet." It properly held that the instruction should have been "aid *and* abet," notwithstanding the language of the sections. Defendant's counsel seeks some comfort in the dicta set out in the opinion pertaining to the necessity of giving a further instruction, on the court's own motion, defining the term "aid and abet." The case there cited as authority for this statement is *People* v. *Dole*, 122 Cal. 486 [55 P. 581, 68 Am.St. Rep. 50]. That case does not support the dicta. It clearly holds that it would be error to use the term "aid *or* abet" for the reasons stated but if the court had used the term "aid *and* abet," the use of these words in the conjunctive included not only aiding in the commission of the crime but doing it with the "knowledge of the wrongful purpose of the perpetrator." To the same effect is *People* v. *Wong Hing*, 176 Cal. 699 [169 P. 357], criticized in *People* v. *Ponce, supra.* There the Supreme Court again held that "The term 'aiding and abetting' are commonplace words, the meaning of which the jurors must be deemed to have understood; hence, and especially in the absence of a request therefor, the court was not called upon of its own motion to define them." (See, also,

7 Cal.Jur. 889, § 39.) Webster's New International Dictionary, 1929, defines "abet" ". . . 2. To instigate, encourage, support, or uphold, as by aid or countenance;—now used chiefly in a bad sense, and distinguished from *aid* as implying a guilty knowledge and wrong intent; as, to *abet* a crime; to *abet* an insurrection." See, also, Words & Phrases, Permanent Edition, 1, page 70. We conclude that the jury was sufficiently informed by the instructions given that before it could convict the defendant as one who aided and abetted another in the commission of the offense charged, it was necessary to prove that he not only aided in its commission but did so with a guilty knowledge of the wrongful purpose of the perpetrator with an unlawful intent.

Next, counsel for appellant contends that the prosecution failed to show that the theft occurred in the county of Tulare. The charge is that it occurred in that county and the evidence shows that the complaining witness's property was at the village of Yettem. No contention was made of this point during the trial. The court will take judicial knowledge of the fact that Yettem is in Tulare County. All of the evidence clearly indicates that the offense occurred in that county.

Finally, it is claimed that the trial court abused its discretion in refusing to grant a new trial. The arguments made under this contention are but restatements of the arguments made on the appeal from the judgment. The jury's verdict was supported by the evidence. The verdict was reached under proper instructions. Defendant was accorded a full and fair trial, and no prejudicial error resulted.

Judgment and order affirmed.

Mussell, J., concurred.