[Crim. No. 5596. Second Dist., Div. One. Sept. 5, 1956.]

THE PEOPLE, Respondent, v. GILBERT CAMARENA, Appellant.

Max Tendler and Gerald Friedman for Appellant.

Edmund G. Brown, Attorney General, and Patrick T. McCormick, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, defendant was charged with violation of section 11500 of the Health and Safety Code of this state, in that he did, on or about May 31, 1955, in the county of Los Angeles, unlawfully sell, furnish and give away a preparation of heroin.

Following the entry of a plea of not guilty the cause proceeded to trial before a jury, resulting in a verdict of guilty. Motion for a new trial was denied and defendant sentenced to state prison. From the judgment of conviction and the order denying his motion for a new trial defendant prosecutes this appeal.

The factual background surrounding this prosecution may be thus epitomized. Anthony John Coia, an investigator in the office of the district attorney of Los Angeles County, assigned to the narcotics squad, met defendant on May 31, 1955, about 10:25 p. m. at a gas station in East Los Angeles. The officer was in the office of the gas station with a woman who was acting as his informant. The officer and his informant observed defendant park his automobile in the lot on which the gas station was located. The officer and the informant went to the office of a cab company which adjoined the property on which the gas station was located. The informant instructed the officer to wait in the office of the cab company. She then went to the vehicle in which the defendant had arrived and next to which the defendant was at the time standing. There followed a short conversation between the informant and the defendant. The informant then motioned for the officer to join herself and the defendant, which he did. The officer was then introduced to the defendant by the informant. The officer was introduced by the informant as a cab driver in the West Los Angeles area. After a short conversation the officer asked the defendant if he was "holding," which is a term used by narcotic addicts to inquire from a person who sells narcotics whether or not the seller has any narcotics in his possession. In reply to the officer's question the defendant answered, "Yes." Thereupon the officer handed a $10 bill to the defendant and in return the latter took a small cellophane package containing three small white capsules from his jacket pocket and handed it to the officer. After a brief conversation the informant and the officer then walked to their vehicle and left the location. The officer then drove to a prearranged location where he met Investigators Hronek and Grant of the district attorney's office. He handed to

Investigator Hronek the capsules which had been purchased from the defendant. Officer Hronek placed the capsules in a small vial container. The officers then took the narcotics to the 5th floor of the Hall of Justice where the vial was marked, sealed, placed in a white envelope which was placed in a brown manila envelope and this envelope was sealed and marked for identification with the fingerprint of Investigator Hronek. This brown manila envelope was later taken to the sheriff's crime laboratory. People's Exhibit Number 1 was identified as the capsules which were purchased from the defendant and which were taken to the sheriff's crime laboratory for analysis.

The District Attorney Investigators Coia and Hronek later secured a warrant for the arrest of the defendant, and on or about July 27, 1955, went to the home of the defendant, entered, and placed him under arrest for violation of section 11500 of the Health and Safety Code of the State of California. The defendant was told that the specific violation was a sale of heroin to an officer.

At the time of the arrest the defendant made the statement, "I may have sold narcotics to an officer, but I don't remember."

Clifford C. Cromp, a chemist employed by the county sheriff's crime laboratory, identified the capsules sold by the defendant as containing the narcotic drug known as "heroin." Mr. Cromp's qualifications as an expert were stipulated to by the parties.

Sworn as a witness in his own behalf, defendant testified that on the date on which he was said to have sold the narcotic to Officer Coia he had driven, after work, to the gas station on the corner of Ford and Brooklyn Avenues. He testified that this was at about 6:30 or 7 p. m. and that he was accompanied by a friend. He further testified that he parked his car in front of the gas station's restroom, that he and his friend walked to the gas station and from there went to a liquor store and bought a half pint of whiskey and then returned to the gas station to drink. He testified that approximately 15 or 20 minutes later a woman known as "Rosie" (the person identified by Officer Coia as his informant) came into the gas station office. According to the defendant, there followed a conversation between himself, his friend and this "Rosie." That he, the defendant, then stated that he was going to the restroom and walked from the office to the restroom into which he was followed by the woman. The defendant

testified that while in the restroom the woman known as "Rosie" told him about a taxi driver who was her "pimp" and who owed her $10 but would not pay her. She said that she was going to tell the taxi driver that she owed the defendant $10 so that he could obtain the money and she could then later get the money from the defendant. After leaving the restroom, according to the defendant, "Rosie" then called Officer Coia whom she introduced to the defendant as "Tony"; that there then followed a conversation in which narcotics were not mentioned; that no money was given to him at any time. He further stated that at the time of the arrest he was told he was being arrested for narcotics and at that time denied dealing in narcotics.

Christie Lacasta appeared as a witness on behalf of the defendant, and testified that he was an owner of a garage in partnership with the defendant. He testified that on about the 31st day of May, 1955 he accompanied the defendant to a service station at Ford and Brooklyn Avenues, at about 6 p. m. The witness testified that he observed the defendant, a woman and a man who came out of a taxicab office talking on the evening in question. That he did not see any money exchanged, although he was close enough to observe.

■ As his sole ground for reversal of the judgment and order herein, appellant contends that the trial court committed prejudicial error in failing to give on its own motion an instruction embodying the principle of law "That to justify a conviction the facts or circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion."

It should be pointed out that appellant requested no instructions. He relies upon the holding in *People* v. *Putnam,* 20 Cal.2d 885, 890 [129 P.2d 367], that "It is incumbent upon a court in a criminal case to instruct the jury of its own motion, charging them fully and fairly upon the law relating to the facts of the case. (Citations.) . . . An instruction is necessary if it is vital to a proper consideration of the evidence by the jury. (Citations.)" (See *People* v. *Trumbo* (1943), 60 Cal.App.2d 681, 688 [141 P.2d 225]; *People* v. *Holt* (1944), 25 Cal.2d 59, 64 [153 P.2d 21].)

It is true, as urged by appellant, that in the case of *People* v. *Bender,* 27 Cal.2d 164, 175 [163 P.2d 8], our Supreme Court emphasized that the above quoted instruction enunciates a most important rule governing the use of circumstantial evidence and that, "In unequivocal language it should be declared to the jury in every criminal case *wherein circum-*

*stantial evidence is received"* (See also *People* v. *Yrigoyen,*
45 Cal.2d 46 [286 P.2d 1]). However, in both of these cases
a necessary element of the prosecution's case rested on circum-
stantial evidence.

We are satisfied that such a situation is not present in the
instant case. Appellant argues that while Officer Coia testi-
fied that the white envelope in which the capsules obtained
from appellant were placed was sealed, that Officer Hronek,
in his testimony, "does not concur with Investigator Coia
that the white envelope into which a vial was placed was
sealed. Clifford C. Cromp, the chemist, does not confirm
that white envelope from which he and Klein removed a vial
was sealed . . . whether the same white envelope that Coia
testified he saw Hronek place a vial container in which there
were the three capsules that Coia said he received from the
defendant is the question in view of the fact that the three
witnesses do not agree as to the white envelope. It is that
circumstantial evidence that casts doubt upon the determina-
tion whether the three capsules which Coia received from the
defendant are the same three capsules which Cromp, as a
chemist, testified about when he said the contents thereof
were, in his opinion, heroin. The evidence is entirely circum-
stantial in the matter of that determination."

However, the record does not support appellant in his
contention that there was any inconsistency in that one of the
People's witnesses testified that an inner white envelope was
sealed and that the other witnesses did not testify to that
fact. At the trial, the last-named two witnesses were not
interrogated as to whether the white envelope was sealed.
Appellant made no attempt at the trial to establish or point
out any claimed inconsistency.

It is true, as contended by appellant, that it was incumbent
upon the prosecution to prove that the subject matter of the
sale in the case at bar was heroin. A mere reading of the
factual narrative above set forth immediately suggests that
this was done, not by circumstantial, but by direct evidence.

Section 1831 of the Code of Civil Procedure defines direct
evidence as follows: "Direct evidence is that which proves
the fact in dispute, directly, without an inference or presump-
tion and which in itself, if true, conclusively establishes that
fact. . . ."

Appellant's contention would therefore appear clearly to
be without merit, for in the cause now engaging our attention,
appellant's conviction rested entirely upon direct evidence

and in no part did the prosecution submit circumstantial evidence to prove guilt. This is far beyond the limitation set by the decisions as to when an instruction regarding circumstantial evidence is required (*People* v. *Physioc,* 86 Cal.App.2d 650, 652 [195 P.2d 23] ; *People* v. *Pedroza,* 125 Cal.App.2d 144, 146 [269 P.2d 921] ; *People* v. *Nunn,* 65 Cal.App.2d 188, 194 [150 P.2d 476] ; *People* v. *Crozier,* 119 Cal.App.2d 204, 209 [258 P.2d 1029]).

For the foregoing reasons, the judgment and the order denying defendant's motion for a new trial are and each is affirmed.

Doran, J., and Fourt, J., concurred.