[Crim. No. 5930.   Second Dist., Div. One.   Nov. 26, 1957.]

THE PEOPLE, Respondent, v. FREDDIE ESCAMILA CALDERON et al., Defendants; PETE M. VASQUEZ, Appellant.

David C. Marcus for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment wherein the appellant was convicted of robbery.

In an information filed in Los Angeles County, defendants were charged with the crime of robbery in that they did on August 4, 1956, forcibly take from the person of Louis A. Balomenos the sum of $80. The defendants pleaded not guilty and the case was consolidated for trial with a cause in which a defendant Perez was charged with robbery. Calderon was found not guilty. Perez and Vasquez were each found guilty as charged and the offense was found to be robbery in the second degree. Probation was denied and appellant Vasquez was sentenced to the state prison and thereafter filed this appeal.

A substantial résumé of the facts as testified to is as follows: Louis Balomenos, while walking along Avalon Boulevard near the Den Café, Wilmington, with a companion, Miss Jeanne Schinke, about 12:45 a. m., August 4, 1956, saw the three defendants crossing the boulevard coming toward him. Balomenos had never seen any of the defendants before. Vasquez apparently spoke first, saying something in Spanish and then in English asked Balomenos if he wanted to fight, and further saying something like "Look at the big shot—big boy—sissy." Balomenos answered that he did not wish to fight. Vasquez said, "We are dirty Mexicans," and Balomenos countered with "I am a clean Greek." Miss Schinke and Balomenos told the defendants to leave them alone and she and Balomenos started walking on. The defendants smelled badly of intoxicating liquor. After a few steps had been taken Balomenos felt a blow from behind, the three defendants grabbed him and pulled his sweater up on to his head. Balomenos was struck with some object under the right eye and was struck otherwise with a stick. His sweater was ripped. Balomenos hit one of the defendants and the latter went down. One or both of the other defendants ran off to a parking lot. Balomenos had a wallet in his rear left pocket containing about $79, and some personal papers. During the scuffle Balomenos felt a hand in his pocket pulling out the wallet. Soon after the one defendant was knocked down two persons known as "Tony" and "Hot Rod" came upon the scene in answer to a call for help from Miss Schinke. Balomenos was bleeding badly where he had been struck on the face and hands. The man known as "Hot Rod" offered to take Balomenos to the nearby Den Café bar to help fix his eye and hand, but Balomenos

stated that he would prefer to go to his nearby hotel room, and did go thereto with his compaion, Miss Schinke. Balomenos changed some of his clothes and then went to the Den Café bar and inquired of Tony whether he knew the names of the defendants. Miss Schinke, about 20 minutes after the altercation, called the police. After the arrival of the police a search was made of the area and some papers of one of the defendants was found. Balomenos did not drink intoxicating liquor, he was not mad at the defendants or anyone else before the fighting began. Miss Schinke saw the defendant Perez with his hands in Balomenos' rear pocket and saw Perez run away. Calderon, one of the defendants, said that as he and his codefendants approached Balomenos and Miss Schinke, Vasquez said, ''Hi Red,'' and Balomenos made inquiry as to whether he was trying to get smart and Vasquez' reply was in the negative. He also stated that he could smell liquor on the breath of Perez and Vasquez. Further, he testified that Balomenos was furious and that Balomenos picked up a board and started charging at Perez and that he, Calderon, tried to stop him and fell to the ground; that Hernandez (Tony) and Vasquez picked him up and he left with them. Calderon also testified that on Sunday morning, after the scuffle, he heard from Balomenos by telephone and that Balomenos stated in the talk that one of the defendants had taken his wallet and that $79 was missing, and if he did not get it back he was going to court. Calderon thereafter spoke to the other defendants and they denied knowing about the missing wallet.

Perez testified that he and Vasquez had drunk some beer and that he knew Miss Schinke by sight, that he did some scuffling with Balomenos, that he did not take the wallet and did not intend to rob anyone. Otherwise his statements coincided largely with Calderon's testimony.

Vasquez stated that he knew Miss Schinke and that he told her to get Balomenos away as the defendants did not want to fight and that Balomenos did want to fight. He further stated that Balomenos swung at Perez with a stick, and that he, Vasquez, grabbed Balomenos and pushed him aside; that he did not take the wallet, but the way Balomenos was acting, he (Vasquez) thought Balomenos must be under the influence of intoxicating liquor.

Frank Phillips testified that he was with Tony Hernandez when Miss Schinke came running into the Den Café bar about midnight and said three persons were beating up

Balomenos, and that they then ran out and saw Balomenos standing with his hands up and Calderon on the ground; that he tried to hold Balomenos back and told Vasquez and Perez that if they wanted to fight Balomenos they should fight him one at a time. He stated that he and Hernandez returned to the Den and Balomenos came to that establishment about 1:15 o'clock a. m. in an excited condition and asked Hernandez if the defendants were Hernandez' friends; that Balomenos stated that he had beaten "hell" out of them and that Balomenos had indicated an offer to fight. Phillips also stated that Balomenos left the Den and came back in shortly and inquired of Hernandez if he knew "those guys"; that Balomenos had said they had stolen his wallet. Hernandez' testimony was substantially the same as that of Phillips and he testified further that he had seen Balomenos drinking on occasion. On cross-examination, Hernandez stated that he had heard that night that Balomenos' wallet had been taken. He denied ever telling Balomenos that if the latter would drop the matter he, Hernandez, could get Balomenos' wallet back and $300 in cash. He said that he heard of the offer, but that it was made by the bartender.

Clarence Carroll, a police officer, testified that he arrived at the Den about 1 o'clock a. m., August 4, 1956, and contacted Balomenos there and observed no odor of alcohol on his breath. He made a search of the area and found a Selective Service Registration card and some photographs.

Balomenos, on rebuttal, testified that shortly before August 23, 1956, the date of Perez' preliminary hearing, he was with Bill Arvanitis at the Den Café, where he saw Hernandez and that Hernandez told him at such time that he would give Balomenos $300 and Balomenos' papers if he, Balomenos, would go with Hernandez to a lawyer with respect to dropping the case.

Balomenos, as a defense witness on surrebuttal, denied that he had wanted to fight when he went back to the Den on the night in question. Further, that Hernandez had later given him the names of the defendants.

Bill Arvanitis testified that he was in the Den Café during August with Balomenos and that he overheard Hernandez say to Balomenos that if Balomenos would drop the case, Hernandez could get Balomenos some $300 in cash and his papers. An objection was made upon the ground that the conversation was hearsay as to the defendants. The court overruled the objection and told the jury that the testimony

was not for the purpose of proving the truth of what was said, but for the purpose of impeaching the testimony of Hernandez.

Appellant first contends that the court erred in failing to instruct the jury on the lesser "crime of assault but necessarily included in the crime of robbery in the second degree."

█     The record is devoid of any request upon the part of appellant for any such an instruction. Appellant cited as authority for his position the cases of *People* v. *Chessman,* 38 Cal.2d 166, 187-188 [238 P.2d 1001], and *People* v. *Williams,* 141 Cal.App.2d 849, 852-853 [297 P.2d 759]. However, the cases mentioned by appellant do not militate against the settled rule that if an appellant wishes to contend that an instruction on a lesser offense should have been given, he must first request such an instruction. (See *People* v. *Welsh,* 7 Cal.2d 209, 211 [60 P.2d 124]; *People* v. *Johnson,* 99 Cal.App.2d 717, 727 [222 P.2d 335]; *People* v. *Zabel,* 95 Cal.App.2d 486, 489 [213 P.2d 60].)

It was appropriately set forth in *People* v. *Dunlop,* 79 Cal. App.2d 207, at pages 210-211 [179 P.2d 658]:

"The appellant Dunlop contends, as his first point on appeal, that the court committed error in failing to give an instruction of its own motion defining grand theft and kindred lesser offenses included in the crime of robbery, even though no such instruction was offered by this appellant or his codefendants. He argues that such an instruction is one of the general principles of law pertinent to this case making it incumbent upon the court to give it of its own motion. He relies upon the case of *People* v. *Best* (1936), 13 Cal.App.2d 606 [57 P.2d 168], in support of this contention. In that case the defendant was charged with murder, the jury was instructed that manslaughter was an included offense, a form of verdict of manslaughter was given the jury, but no instruction was given defining the crime of manslaughter, even though one was offered by the prosecution. In that case it was held to be prejudicial error for the court to have failed to instruct the jury on the definition of manslaughter. In the instant case no instruction was given by the court concerning any lesser but included offense, nor that the jury could find the appellant guilty of any crime excepting robbery, which was fully defined, and no instruction was here offered by anyone in the case relating to included or lesser offenses. Where, as here, the record fails to disclose that the defendant requested an instruction re-

garding lesser and included offenses, he may not for the first time on appeal urge the omission to instruct the jury thereon, as reversible error. (Citing cases.)''

■ The second contention of the appellant is that the court erred in permitting the witness Arvanitis to testify to the conversation between Balomenos and Hernandez in the absence of any of the defendants, on the grounds that the testimony was hearsay as to the defendants, and that there was no testimony by Hernandez which would warrant the court admitting such evidence for impeachment purposes.

On cross-examination, Hernandez was asked, without objection, if he had approached Balomenos about August 21st, at the Den, and had said in substance to Balomenos that if the latter would drop the matter he (Hernandez) could get Balomenos his wallet back and $300 in cash. Hernandez denied making this statement to Balomenos.

On redirect examination Hernandez was asked if he had heard of such a $300 offer to Balomenos, and he said that he had heard of it, but that the statement was made by the bartender.

The testimony of Arvanitis in question, was in our opinion proper. It is to be noted that the defendants' testimony was to the effect that Balomenos was in an angry, quarrelsome mood at the time of the altercation, which sharply contradicted Balomenos' testimony. An implication of the defense testimony was that Balomenos fabricated the charge of the crime from a spirit of vindictiveness. The statements of Phillips and Hernandez tended to show that Balomenos was still in a quarrelsome mood after the scuffle, thereby in some measure corroborating the description of Balomenos which the defendants had presented in their testimony. Hernandez also said he had seen Balomenos drinking, which Balomenos denied. Hernandez' testimony did go to material matters and had a tendency to refute significant parts of Balomenos' testimony. The attempt to suborn witnesses, if proved, is material in weighing the testimony of the one guilty of the attempt. (See *People* v. *Wong Chuey,* 117 Cal. 624, 627-628 [49 P. 833]; *People* v. *Alcalde,* 24 Cal.2d 177, 184-185 [148 P.2d 627]; *People* v. *Dorland,* 2 Cal.2d 235, 249-250 [40 P.2d 474]; *People* v. *Kendall,* 111 Cal.App.2d 204, 214 [244 P.2d 418]; *People* v. *De Santis,* 11 Cal.App.2d 86, 87-88 [52 P.2d 936].)

Even assuming for the moment that the trial court's

rulings were held to be erroneous, it could not be held to be sufficiently prejudicial to require a reversal.

The judgment is affirmed.

White, P. J., and Drapeau, J.,* concurred.

*Assigned by Chairman of Judicial Council.