[Crim No. 1521. Fourth Dist. Oct. 27, 1959.]

THE PEOPLE, Respondent, v. ROSARIO R. BERNAL
et al., Appellants.

Blodget, Gilbert & Cochran and John H. Gilbert, Jr., for Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Respondent.

GRIFFIN, P. J.—Defendants were convicted by a jury of the crime of the sale of marijuana (violation of Health & Saf. Code, § 11500) based on a grand jury indictment.

About 4 p. m. on May 22, 1958, one Velasquez, a narcotic inspector, with one "Max," both of Mexican extraction and speaking the language, entered a pool hall in Santa Ana and talked with defendant and appellant Rosario R. Bernal. Bernal and Max engaged in conversation away from Velasquez. Later Velasquez asked Bernal if he had a "can" (can of marijuana) and Bernal replied that the man who had such was not around but should soon return. About 8:15 p. m. Velasquez returned to the café, saw Bernal near the curb and when Velasquez stopped his car Bernal came over to it and remarked that the man waited for awhile but then went home. They went to the man's home and parked across the street. Bernal asked Velasquez how many he wanted and Bernal sounded the horn of his car. Defendant and appellant Robert C. Alcarez came out to the front yard and Bernal walked over to meet him. After conversing with him Bernal returned to the car and told Velasquez that Alcarez would give him 20 cigarettes for $9.00. They both walked over to de-

fendant Alcarez and Velasquez, when two or three feet from him, saw Alcarez hand to Bernal what appeared to him to be brown-wrapped cigarettes. Velasquez handed Alcarez a $10 bill and asked if he would not "give him a break" about another "can." He said "yes" and told both of them to go back to their car. Velasquez returned and Bernal followed later. He handed Velasquez a piece of torn newspaper containing 20 brown paper-wrapped cigarettes and $1.00 in change. Some other officers passed by in a car and Alcarez returned to his house. Bernal and Velasquez drove away. Velasquez and Bernal agreed to meet again the next day to obtain the extra can ordered. Velasquez dropped Bernal at the pool hall and then drove over to meet other officers who had been covering the scene. He showed them the 20 cigarettes received from Bernal and Alcarez. These cigarettes were chemically analyzed and found to be marijuana.

A day or two later Velasquez returned to the Alcarez home and was unable to see Alcarez but there he spoke to a woman. On May 29 other officers visited the pool hall and observed Alcarez and Bernal standing nearby. The officers purchased a round of drinks for defendants and endeavored to locate Bernal's room.

In the early hours on May 30, officers went to Alcarez' home to arrest him. The front door was partially open and the screen door was hooked. Alcarez was awakened and was told it was the police. They asked him to open the screen. Defendant refused. After 20 seconds the police yanked open the screen door and observed defendant Alcarez and wife in bed. Alcarez was placed under arrest. The warrant was read aloud to him and then it was handed to him to read. A cursory search of the bedroom was made. In the meantime other officers, who were outside, made a search of the area surrounding the house and a two-stall garage. There they found hidden behind a packing box in the garage nearest defendant's home a metal can with a brown paper-wrapped marijuana cigarette contained therein. The paper was of a color darker than those claimed to have been sold by defendant. Alcarez was shown this cigarette. He denied any knowledge of it and claimed the officers planted it there. He was asked if this garage belonged to him and he answered in the affirmative. He admitted seeing Velasquez somewhere before the night of the claimed delivery of the 20 cigarettes but did not remember selling him anything. Bernal, when questioned, said he remembered seeing Velasquez at the pool hall that night but did not talk

to him and did not take him any place to obtain marijuana. In defense, at the trial, Bernal testified he did meet Velasquez and Max the night of the claimed sale, at the pool hall; that the officers inquired where they could buy some marijuana and he told them he did not know and that after pleading with him he did go with the officers to Alcarez' home and asked Alcarez where Velasquez could buy some marijuana. He then testified that Alcarez ran them away and no marijuana was purchased or handled by either of them.

Alcarez admitted the visitation to his home by Bernal and Velasquez and told of the endeavor of Bernal to have him sell marijuana to Velasquez. He said he refused, did not make the sale, and did not engage in such traffic and accordingly they left. He testified the land upon which his house and garage stood was owned jointly with his brother; that the brother lived next door and jointly used the garage; and that he knew nothing about a cigarette claimed to have been found in it. Alcarez' wife corroborated his testimony to some extent but admitted it was dark and she could not, due to the presence of a hedge, see everything that happened that night.

On this appeal defendants claim first that the court erred in admitting into evidence the cigarette claimed to have been found in the garage because it did not tend, logically or by inference, to prove, with reasonable certainty, anything in reference to the prior alleged sale, citing such authority as *People* v. *Spencer,* 140 Cal.App.2d 97, 103-104 [294 P.2d 997]; *People* v. *Albertson,* 23 Cal.2d 550 [145 P.2d 7]; *People* v. *McCullough,* 158 Cal.App.2d 310 [322 P.2d 289]; and *People* v. *Willard,* 92 Cal. 482 [28 P. 585].

The primary question is whether the search and seizure of the marijuana in the garage was incidental to a lawful arrest. Here, the evidence discloses a sale of marijuana by defendant, at or near his home, to the officers a few days prior to the arrest and search. Possession of such form of narcotic in and about the home on the subsequent occasion could bear directly on the question whether defendant did, in fact, make the sale on the day alleged, even though the paper in which it was rolled was of a different shade or color. Whether this cigarette was planted there by the officer, as claimed, or whether it, in fact, did belong to defendant, was a factual question for the jury. The officer was armed with a warrant and defendant was legally under arrest. The evidence was properly submitted to the jury. In *People* v. *Montes,* 146 Cal.App.2d 530 [303 P.2d 1064], defendant was arrested out-

side his home. Search of the home was authorized. In *Trowbridge* v. *Superior Court,* 144 Cal.App.2d 13 [300 P.2d 222], a search of the garage was authorized where defendant was arrested near her home. (See also *People* v. *Peete,* 28 Cal.2d 306, 315 [169 P.2d 924]; *People* v. *Winston,* 46 Cal.2d 151 [293 P.2d 40]; *People* v. *Guy,* 145 Cal.App.2d 481 [302 P.2d 657]; *United States* v. *Charles,* 8 F.2d 302; *Matthews* v. *Correa,* 135 F.2d 534; *Harris* v. *United States,* 331 U.S. 145 [67 S.Ct. 1098, 91 L.Ed. 1399]; *United States* v. *Rabinowitz,* 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653]; *State* v. *Estes,* 151 Wash. 51 [274 P. 1053]; *People* v. *Alaniz,* 149 Cal.App.2d 560 [309 P.2d 71].) ▮ When authorized, a search may be before or after an arrest and the weight of the evidence to establish knowledge is a factual question for the jury. (*People* v. *Brown,* 147 Cal.App.2d 352 [305 P.2d 126]; *People* v. *Boyles,* 45 Cal.2d 652, 655 [290 P.2d 535]; *People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855]; *People* v. *Bean,* 149 Cal.App.2d 299, 303 [308 P.2d 27]; *Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36].)

It is next argued that the evidence was insufficient to show that the cigarettes Alcarez gave to Bernal were the same ones Bernal later gave to Velasquez. The evidence and circumstances related authorized the jury to believe they were. (*People* v. *Blinks,* 158 Cal.App.2d 264, 267 [322 P.2d 466]; *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].)

▮ Defendants offered an instruction in the language of CALJIC 851 on entrapment. The court refused it. The claim is that the evidence authorized the giving of such an instruction even though defendants denied such sale. Error is claimed in this respect (citing such authority as *People* v. *Valdez,* 132 Cal.App.2d 783 [283 P.2d 36]; *People* v. *Grijalva,* 48 Cal.App.2d 690, 693 [121 P.2d 32]; and *Henderson* v. *United States,* 237 F.2d 169).

▮ *People* v. *Herrera,* 171 Cal.App.2d 551, 556-557 [340 P.2d 690], states: " 'Entrapment is the conception and planning of an offense by an officer and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer. In other words, persuasion or allurement must be utilized to entrap . . .' ▮ . . . 'if the criminal intent originates in the mind of the accused and the offense is completed, the fact that an opportunity was furnished, or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him therefor, constitutes no

defense. . . . If the officer uses no more persuasion than is necessary to an ordinary sale, and the accused is ready and willing to make the sale, there is no entrapment.' . . . ■ the defense of entrapment is a positive defense imposing upon an accused the burden of showing that he was induced to commit the act for which he is being prosecuted, . . . ■ 'It is not the entrapment of a criminal upon which the law frowns, but the seduction of innocent people into a criminal career by its officers is what is condemned and will not be tolerated. ■ Where an accused has a preexisting criminal intent, the fact that when solicited by a decoy he committed a crime raises no inferences of unlawful entrapment.' . . . ■ In other words, where a law enforcement officer, or his agent, merely provides 'the occasion for one engaged in illegal activities to ply his trade' there can be no unlawful entrapment. . . .'' (Citing cases.)

■ Here the evidence does not indicate defendants were induced to sell marijuana when they otherwise would not have considered such a thing. Defendants made no such assertion. The evidence showed a mere request for the whereabouts of a source of supply and defendant Bernal took the officers to defendant Alcarez and without any word from the officer, supplied him with 20 marijuana cigarettes. This does not appear to be unlawful entrapment within the meaning of that term. There being no substantial evidence supporting this theory, the court properly refused such an instruction. (*People v. Evans,* 134 Cal.App.2d 733, 736 [286 P.2d 368].)

■ Next it is claimed that the court erroneously failed to give, on its own motion, an instruction that where the evidence is substantially based on circumstantial evidence, the circumstances must be consistent with guilt and irreconcilable with any other rational conclusion. (Citing *People* v. *Koenig,* 29 Cal.2d 87 [173 P.2d 1]; and *People* v. *Bender,* 27 Cal.2d 164 [163 P.2d 8].)

This appears to be the general rule. However the court is not required to so instruct if the inculpatory evidence consists wholly, largely, or substantially of direct evidence of the crime and the circumstantial evidence is only incidental to and corroborative of the direct evidence of guilt. (*People v. Jerman,* 29 Cal.2d 189, 197 [173 P.2d 805]; *People* v. *Yrigoyen,* 45 Cal.2d 46, 49 [286 P.2d 1]; *People* v. *Norton,* 141 Cal.App.2d 790, 794 [297 P.2d 439]; *People* v. *Barkoff,* 163 Cal.App.2d 639, 644 [329 P.2d 1005]; *People* v. *Williams,* 155 Cal.App.2d 328, 332 [318 P.2d 106]; *People* v.

*Camarena,* 144 Cal.App.2d 345, 348 [300 P.2d 879] ; *People v. Pedesclaux,* 156 Cal.App.2d 174 [319 P.2d 93].)

The testimony of Velasquez directly proved that Bernal told him he could obtain marijuana cigarettes at Alcarez' house; that he directed the officer to that house; that when they arrived Bernal asked the officer how many he wanted; that Bernal met Alcarez in the yard and the officer, a few feet away, saw Alcarez hand several brown paper-wrapped cigarettes to Bernal; that the officer gave Alcarez $10 and returned to the car, and immediately thereafter Bernal returned to the car and handed the officer 20 brown paper-wrapped cigarettes which were analyzed and determined to be marijuana. It sufficiently appears that the entire unlawful transaction which defendants were charged with and convicted of, as well as the narcotic character of the merchandise, was proved by direct testimony. No other conclusion than that of guilty knowledge could be reached in light of this evidence. The only real circumstantial evidence consisted of a cigarette found in the garage. No charge was predicated upon that offense. The main purpose for which that cigarette was introduced was to corroborate the testimony of Officer Velasquez. Defendants claim there was a "gap" in the chain of evidence, in that there was no direct evidence that the cigarettes seen by the officer to pass to Bernal were in fact the same cigarettes turned over to him by Bernal. There is no requirement that the guilt-laden object be constantly under the eye of the witness without a break. (*People* v. *Burns,* 121 Cal. 529, 531 [53 P. 1096] ; *People* v. *Physioc,* 86 Cal.App.2d 650 [195 P.2d 23] ; *People* v. *Candiotto,* 128 Cal.App.2d 347, 356 [275 P.2d 500] ; *People* v. *Pedroza,* 125 Cal.App.2d 144 [269 P.2d 921].) It may be reasonably said that the evidence produced consisted wholly, largely, or substantially of direct evidence and the giving of the instruction suggested, on the court's own motion, was not mandatory.

Next, defendants argue that the trial court, after giving an instruction on aiding and abetting, failed to define that term, citing *People* v. *Ponce,* 96 Cal.App.2d 327 [215 P.2d 75]. While such an instruction might have been appropriate, under the facts of the instant case, we see no prejudicial error in failing to give it and in refusing defendant's proffered instruction on the subject which was in the language of that given in *People* v. *Lamb,* 134 Cal.App.2d 582, 585 [285 P.2d 941]. The argument is that, according to the evidence, Bernal was guilty only of possession and accordingly

there was no evidence that he aided and abetted Alcarez in the sale. This view of the evidence is not meritorious. All of it pertained to his assistance in bringing about and completing the sale. The jury was instructed that:

"All persons concerned in the commission of a crime who either directly and actively commit the act constituting the offense or who knowingly and with criminal intent aid and abet in its commission, or, whether present or not, who advise and encourage its commission, are regarded by the law as principals in the crime thus committed and are equally guilty thereof."

It was also instructed, at defendant's request, that: "The purchase of marijuana is not the same as the sale of it and therefore if you find that the defendant, Rosario Bernal, simply aided or assisted in the purchase of marijuana, then I instruct you to find the defendant, Rosario Bernal, not guilty of the offense charged against him, to wit, the sale of marijuana."

Under the circumstances, we conclude that no prejudicial error resulted in this respect. (*People* v. *Johnson*, 99 Cal. App.2d 717, 731 [222 P.2d 335] ; *People* v. *Ponce, supra*; *People* v. *Kelso*, 25 Cal.2d 848 [155 P.2d 819] ; *People* v. *Barker*, 4 Cr. No. 1527, *(Cal.App.) 344 P.2d 876, decided by this court October 15, 1959.)

 Lastly, defendants complain because the trial court failed, on its own motion, to instruct the jury that the defendant Bernal could be convicted of a lesser included offense, i.e. possession, citing *People* v. *Carmen*, 36 Cal.2d 768 [228 P.2d 281]. Apparently, in that case, such an instruction was offered and refused. No request was here made by defendant for such an instruction. Defendant Bernal testified he did not have possession of any narcotic and did not assist in the sale of such product. The evidence produced indicates this defendant either participated in the sale or that he did not. The jury was instructed, at his request, that if he was only a purchaser he was entitled to a verdict of not guilty. In view of the evidence, the instructions given, and the fact that he requested no instructions on the subject, we conclude that defendant Bernal was not prejudiced by the failure of the trial court to instruct the jury that he could be found guilty

---

*A hearing was granted by the Supreme Court on December 10, 1959. The final opinion of that court is reported in 53 Cal.2d —— [2 Cal.Rptr. 467, 349 P.2d 73].

of possession, as an included offense. (*People* v. *Calderon*, 155 Cal.App.2d 526 [318 P.2d 498] ; *People* v. *Wilder*, 151 Cal. App.2d 698, 707 [312 P.2d 425].)

Judgment and order affirmed.

Shepard, J., concurred.

A petition for a rehearing was denied November 23, 1959, and appellants' petition for a hearing by the Supreme Court was denied December 23, 1959.