[Crim. No. 8997. Second Dist., Div. Three. July 20, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. ALAN PHIL-
LIP ROTH II, Defendant and Appellant.

524

Richard T. Sykes, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Peter Graber, Deputy Attorney General, for Plaintiff and Respondent.

FILES, J.—The record contains evidence of these events:

On October 13, 1962, about 4 a.m. defendant, a youth of 18, accompanied by a juvenile named Tim, aged 17, arrived at Zuma Beach. They had been drinking Scotch whiskey and beer since 7 o'clock the previous evening, though by defendant's own statement he was not drunk. As they walked along the beach they saw a young couple, George and Betty, sleeping on the beach under a blanket. Defendant pulled off the blanket and attacked George, seizing him by the throat. Tim took Betty by the throat and lifted her up. While George fought with defendant, Betty broke loose and ran to their automobile. She started the engine, drove a few feet, and honked the horn. Tim followed her. In the dark she thought he was George, so she let him in. Tim pulled her out

of the car and dragged her back to the beach. Tim then joined with defendant in hitting and kicking George, who was down on the sand. A few minutes later Betty again ran for the car. This time defendant caught her, knocked her down on the pavement and then took her by the hair and knocked her head against the pavement as he ordered her to stop screaming. Then he dragged her back to the vicinity of the blanket on the beach. After about 10 minutes of fighting, George was too weak to resist further. Defendant then twisted George's arm behind his back and forced him to walk to the car. Defendant searched the car and inspected the registration slip and then brought George back to the beach. Defendant then ordered George to empty his pockets. This produced only 30 cents and a ball-point pen. At this point Tim and the defendant tied George, using a belt to hold the hands and a sweater for the feet.

Then defendant twisted Betty's arm behind her back and walked her down the beach about 200 feet, leaving Tim to guard George. At the end of this march defendant knocked Betty down and forcibly removed her clothing as she struggled and screamed. He told her he intended to have intercourse with her. Before he was able to do so, Betty escaped and ran to her car and drove away. Within a quarter of a mile she encountered a sheriff's patrol car. She led the deputy sheriffs back to the beach parking lot, where defendant and Tim were apprehended as they started to drive away in their car. The officers found George tied up on the beach just as his assailants had left him.

Defendant's testimony differed from that offered by the prosecution only in some details. Defendant said that when he saw the sleeping couple he lifted the blanket "out of curiosity," whereupon George jumped up and started to fight, and defendant fought in self-defense. After he had overcome George's attack, the two men walked to the car together, without compulsion, according to defendant. He later had to tie up George to keep him from starting to fight some more. Then defendant, according to his version, invited Betty to walk down the beach, and she acquiesced. Defendant admits he attempted to have intercourse with her before she ran away.

Defendant was tried before a jury on an information containing the following five counts: I, kidnaping of Betty (Pen. Code, § 207); II, assault with intent to rape Betty (Pen. Code, § 220); III, assault by means of force likely to

produce great bodily injury on Betty (Pen. Code, § 245); IV, kidnaping of George (Pen. Code, § 207); V, assault by means of force likely to produce great bodily injury on George (Pen. Code, § 245). The jury was instructed that if they found defendant guilty of either count II or count III, they must acquit him of the other. The verdict was guilty as to counts I, II, IV and V, and not guilty of count III. This appeal is from the judgment.

The evidence abundantly supports the four guilty verdicts. ■ There is no merit in defendant's contention that there was no kidnaping because the movement of the victims was "incidental to the assault." *Cotton* v. *Superior Court,* 56 Cal.2d 459 [15 Cal.Rptr. 65, 364 P.2d 241], relied upon by defendant, is readily distinguished. In the *Cotton* case a group of men engaged in a labor dispute invaded a barracks where the nonstriking workers were quartered. In the course of the fighting, some of the nonstrikers were pushed, chased and dragged around. The Supreme Court concluded "All 'asportation' in the instant case would appear to be only incidental to the assault and rioting." (56 Cal.2d at p. 464.)

In the *Cotton* case there was no apparent attempt to imprison the victims or deprive them of their freedom, except momentarily, or to move the victims, except as a means of brief bodily assault.

In the present case the fight with George was over and the victim had been subdued before he was moved. Then he was marched as a prisoner to his car—a distance variously estimated at 15, 20 and 25 feet—held there while defendant searched the car, then taken back to the beach where he was securely tied, and then abandoned in this condition when his captors were ready to leave.

Betty was captured as she attempted to drive away for help during the assault on George. She was dragged back to the beach and restrained there until she escaped temporarily, then was dragged from the car to the beach a second time, and later marched a distance of 200 feet up the beach as defendant's prisoner to the site of the attempted rape.

Both of the victims in this case were subjected to the personal indignity and hazard of being deprived of their liberty for an appreciable period and being moved under such restraint for appreciable distances to suit the desires of their captors. The prosecution's evidence shows that the purpose and effect of the movement went far beyond the incidents of an assault. It also clearly supports the finding that the re-

moval of both victims was forcible. "The cases hold that it is the fact, not the distance, of forcible removal which constitutes kidnaping in this state." (*People* v. *Monk,* 56 Cal.2d 288, 295 [14 Cal.Rptr. 633, 363 P.2d 865].)

There is some merit in defendant's contention that the jury should have been given the instructions which he requested on the right of a person assaulted to stand his ground and defend himself. No instructions upon this subject were given. The applicable law is stated in *People* v. *Burns,* 88 Cal.App.2d 867, 871 [200 P.2d 134] : "It is elementary that the court should instruct the jury upon every material question upon which there is any evidence deserving of any consideration whatever. [Citing cases.] The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. [Citing cases.] That is a question within the exclusive province of the jury. However incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true."

The proposed instructions on self-defense would not have applied to any charge other than that of assault upon George. Defendant has never contended that he needed to defend himself against Betty. As for count IV, the kidnaping of George, all of the evidence is to the effect that George became exhausted and stopped fighting before he was taken to the automobile and then back to the beach. The issue on this count is whether George went voluntarily, or whether he was moved under force. There is no claim that defendant moved George to the car and back as a means of self-defense.

Defendant makes the further contention that the court should have instructed the jury that it might convict defendant of simple assault, as a lesser offense included within the charge of assault by force likely to produce great bodily injury. The record shows defendant failed to request such an instruction. What defendant's counsel did do was to hand to the clerk, with his requested instructions, a printed form, supplied by the court, designed to be adapted as an instruction on a lesser included offense by filling in the blanks to indicate the offenses referred to.[1]

---

[1]The blank is form 115 from California Jury Instructions, Criminal (CALJIC):

"You may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, [or of an

528

The record shows that the trial judge marked this blank "Refused," and added these words, "Form not filled in or directed to specific offense."

█ The act of handing this blank form to the clerk cannot be regarded as a request to instruct the jury as to any particular included offense. It would be manifestly unfair to the trial court and to the People to give any legal effect to such a practice, and leave the defendant in a position to assert, on appeal, that he meant to request an instruction on some particular included offense. The inadequacy of this blank form is particularly apparent where the information contains several counts, and there are several lesser offenses which might be deemed to be within the scope of the pleading.

It has often been said that the trial court need not instruct on included offenses unless the defendant so requests. (See Witkin, Cal. Criminal Procedure (1963) § 480; Fricke, Cal. Criminal Procedure (6th ed. 1962) p. 349 (but see p. 317).)[2]

---

attempt to commit the offense,] if, in your judgment, the evidence supports such a verdict under my instructions.

"To enable you to apply the foregoing instruction, if your findings of fact require you to do so, I instruct you that the offense of .......................... ................. .......................... ..............., of which the defendant is charged in [count... .............of] the information, necessarily include the crime[s] of................................ ..................................................... ....... ..................................................... ....... ..................................................... ............"

[2]Some of the cases affirming judgments upon this ground are *People v. Chessman,* 38 Cal.2d 166, 187 [238 P.2d 1001]; *People v. Meichtry,* 37 Cal.2d 385, 390 [231 P.2d 847]; *People v. Welsh,* 7 Cal.2d 209, 211 [60 P.2d 124]; *People v. Bailey,* 142 Cal. 434 [76 P. 49]; *People v. Clark,* 145 Cal. 727, 729 [79 P. 434]; *People v. Calderon,* 155 Cal.App.2d 526, 530 [318 P.2d 498]; *People v. Walker,* 155 Cal.App.2d 273 [318 P.2d 77]; *People v. Williams,* 141 Cal.App.2d 849, 853 [297 P.2d 759]; *People v. Arguilida,* 85 Cal.App.2d 623 [193 P.2d 478]; *People v. Dunlop,* 79 Cal.App.2d 207 [179 P.2d 658]; *People v. Nudo,* 38 Cal. App.2d 381, 384 [101 P.2d 162].

But see *People v. Church,* 116 Cal. 300 [48 P. 125], where a robbery conviction was reversed for failure to instruct on larceny. The opinion does not disclose whether the instruction was requested, but it contains this language (at p. 303):

"Again, in every trial upon a charge of robbery, where the evidence justifies it, the court should, of its own motion, in the absence of request upon the part of counsel, inform the jury that larceny is included in the offense of robbery, *and that their verdict may be framed upon those lines.* While this court has refused to set aside verdicts by reason of the

In *People* v. *Bailey,* 142 Cal. 434 [76 P. 49], the court pointed out that this rule gives the defendant his choice whether lesser offenses will be submitted to the jury. The court said (at p. 436) : ''The rule as above stated is upon the whole not unfavorable to a defendant. If he desires the jury to understand that they are not compelled to either find him guilty of the high crime charged or acquit him entirely he can ask the court to so inform them. On the other hand, if he thinks that the jury cannot and will not convict him of the crime charged, and must therefore acquit him, his argument to them on that theory is not embarrassed by an interference of the court in the shape of an instruction that they may find him guilty of some other and perhaps only slightly lesser crime than the one charged. ''

An exception to this rule has been expressed in murder cases, where it has been held that the trial judge must instruct on lesser offenses, without request, if the evidence would support conviction of a lesser offense. (*People* v. *Lewis,* 186 Cal.App.2d 585, 597 [9 Cal.Rptr. 263]. See *People* v. *Wade,* 53 Cal.2d 322, 334 [1 Cal.Rptr. 638, 348 P.2d 116] ; *People* v. *Manzo,* 9 Cal.2d 594, 598 [72 P.2d 119] ; *People* v. *Best,* 13 Cal.App.2d 606, 610 [57 P.2d 168].)

The matter at issue here is whether it was the duty of the trial court to give an instruction on the offense of simple assault in the absence of any proper request. ▮ In *People* v. *Wade,* 53 Cal.2d 322, at page 334 [1 Cal.Rptr. 638, 348 P.2d 116], the Supreme Court defined the trial court's duty as follows: ''In determining what instructions a trial court is required to give without request, the rule is usually stated to be that the court has a duty to give instructions on the general principles of law governing the case, even though not requested by the parties, but it need not instruct on specific points developed at the trial unless requested. . . .

---

trial court's failure to so instruct, holding that the defendant has no cause of complaint where he sits idly by without request upon his part to give the instruction, still, the better practice, and the only strictly correct practice, is for the court to inform the jury of all offenses which are necessarily included in the principal offense charged. ''

Contrast this with *People* v. *Arnold,* 116 Cal. 682 [48 P. 803], where the same court, same department, two months later, affirmed a conviction for assault with a deadly weapon despite failure to instruct on simple assault, saying (at p. 688): ''[I]f defendant deemed such instruction pertinent or material, he should have requested it. The failure to give it, in the absence of such request, has been repeatedly held not error. ''

"The rule seems undoubtedly designed to promote the ends of justice by providing some judicial safeguards for defendants from the possible vagaries of ineptness of counsel under the adversary system. Yet the trial court cannot be required to anticipate every possible theory that may fit the facts of the case before it and instruct the jury accordingly. The judge need not fill in every time a litigant or his counsel fails to discover an abstruse but possible theory of the facts.

"The most rational interpretation of the phrase 'general principles of law governing the case' would seem to be as those principles of law commonly or closely and openly connected with the facts of the case before the court. An examination of the cases concerned with this situation will demonstrate the efficacy of this hypothesis. It has, for example, been held in prosecutions for murder that it is error to fail to give an unrequested instruction on manslaughter where the facts of the case would warrant a verdict of guilt as to such offense."

The comment in *Wade* that the mandatory instruction rule is a judicial safeguard against "vagaries of ineptness of counsel" should be read in the light of the more recent decision in *People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487], where a judgment was reversed on account of the failure of defense counsel to raise the issue of illegal search. In *Ibarra* the Supreme Court considered whether counsel's failure to object to the People's evidence was a tactical decision or a lack of preparation. The court's conclusion was that the attorney's failure to object was a result of his failure to know the law, and thus his defense was inadequate, and for this reason defendant was entitled to a reversal.

In the present case it is quite apparent that the failure of counsel to request an instruction on the lesser offense was not a tactical decision. He intended to make the request, but neglected to fill out the form which would have made his purpose intelligible. This case is one in which an instruction on simple assault would have been particularly appropriate. The assault on George was with hands, fists and feet, and he suffered no bodily injury other than a cut mouth and some bruises. It is of course unnecessary for the prosecution to show that the victim actually received injuries in order to support a conviction (*People* v. *Schmidt,* 66 Cal.App.2d 253 [152 P.2d 1021]), but the absence of serious injuries is a factor which the jury might consider in determining what

kind of force was used. (See 1 Witkin, Cal. Crimes (1963) § 272.) While the evidence is sufficient to support the finding that the assault was made "by means of force likely to produce great bodily injury," as the information charges, the jury might also have reasonably concluded that no such force was used. It seems hardly probable that a jury, after hearing all of the evidence in this case, would ever have acquitted defendant, but it is not improbable that a jury would have found the offense to be a simple assault if the instructions had permitted it. This was an option which should have been submitted to the jury for its consideration. (Cf. *People* v. *Yancy,* 171 Cal.App.2d 371, 375 [340 P.2d 328].)

Under the particular circumstances of this case, where it was purely a matter of inference whether the assault was of the severity contemplated by Penal Code, section 245, or the simple misdemeanor referred to in section 240, the failure of counsel to make an intelligible request for an instruction on the lesser offense should be regarded as one of the "vagaries of ineptness of counsel" against which the defendant should have been protected by the court's own action. (Cf. *People* v. *Lewis,* 186 Cal.App.2d 585, 597 [9 Cal.Rptr. 263].)

For this reason, the conviction of the felonious assault upon George (count V) of the information must be reversed.

The absence of an instruction on misdemeanor assault could not have prejudiced defendant with respect to count II, which charged an assault on Betty with intent to commit rape. Betty testified that defendant knocked her down and placed his knee on her stomach. Then he removed her clothes while she screamed and fought with him. He attempted to have intercourse, but was unsuccessful because she struggled too much. He spit in her mouth, causing her to vomit. Finally she said to him, "Well, let go of me. Maybe I might. . . . Let me go and let me rest for a minute." When he released her she made her escape. Defendant, on the other hand, testified that Betty consented to everything that he did. He said they both tried to have intercourse, but for some reason were unsuccessful.

The jury had to choose between defendant's testimony that Betty cooperated and Betty's testimony that she was attacked. If defendant's story was true, there was no assault. There is no middle ground. Defendant was innocent or he was guilty of the felony which was charged. "The law is well settled in this state that the trial court may properly refuse to instruct upon simple assault where the evidence is such as

to make it clear that if the defendant is guilty at all, he is guilty of the higher offense." (*People* v. *McCoy*, 25 Cal.2d 177, 187 [153 P.2d 315].)

Defendant now contends that some instruction should have been given on the subject of the victim's consent in connection with the charge of assault with intent to commit rape. The record shows no such instruction was offered. Defendant argues in his brief that it was necessary to bring to the jury's attention "the concept that the young lady must have been of a mind where she would have resisted."

Defendant's argument (which is unsupported by citation of authority) confuses the crime of rape with the crime of assault with intent to commit rape. ■ To support a conviction for the latter offense, the prosecution must prove the assault and an intent on the part of the defendant to use whatever force is required to complete the sexual act against the will of the victim. (See *People* v. *Meichtry*, 37 Cal.2d 385, 388 [231 P.2d 847]. Cf. *People* v. *Furrh*, 146 Cal.App.2d 740 [304 P.2d 849].) It is the state of mind of the defendant, not of the victim, which is in issue. ■ The victim's conduct and intentions may be pertinent insofar as they aid the jury in evaluating defendant's acts and intent, but there is no requirement that the court, on its own motion, elaborate to the jury what conduct of the victim might be inconsistent with the proof of an assault.

Defendant's brief also complains that the court failed to give his requested instruction on the effect of intoxication where specific intent is an element. The record shows that what defendant submitted was another blank form, CALJIC 78-B.[3] The trial judge marked it "Refused" and added the words, "Form not filled in."

---

[3]California Jury Instructions, Criminal (CALJIC) Form 78-B, as submitted by defendant, is as follows:

"In the crime of ........ ................................., of which the defendant is accused in this case [in count................. of the information], the specific intent to......................... ............................................. ............................... ...... .............. ........is a necessary element of the crime.

"[Thus the defendant may not be found guilty of the crime of...... ..................... ........., charged against him in [count...... .............. ..of] the information, unless you can and do find from the evidence that............................................... ................................................................ .................................. ..... ....................]. This fact requires an inquiry into the state of mind under which the defendant committed the act charged, if he did commit it. In pursuing

The record also shows that the People requested and the court gave the identical instruction, properly adapted to apply to the offense of assault with intent to commit rape. Defendant has no cause for complaint.

Defendant's brief asserts that ''Many conclusions were testified to by the People's witnesses over the objections of defense counsel,'' and ''Cross examination by defendant's counsel was restricted on many occasions.'' These generalizations require no discussion here. This court has read the record and is satisfied that there was no prejudicial error in the rulings on evidence.

Defendant raises as a separate point the admission of certain testimony in rebuttal, which defendant says was not proper rebuttal. The record does not bear out that criticism. When defendant took the stand on his own behalf he testified that one of the arresting officers had said to him, ''Why don't you run ... so I can shoot you,'' and ''I ought to blow your brains out anyway.'' Defendant also told how the officers had pulled his sweater and had kept him sitting in handcuffs when he wanted to rest. Deputy Prestidge, the officer referred to, was called in rebuttal. He denied having mistreated defendant and denied having made those statements. The officer was then asked to describe defendant's demeanor at the time of arrest. The answer was: ''The defendant's demeanor was very belligerent toward police officers, and some of his statements was, 'You punks take that badge off, and I will beat the hell out of you,' at the same time very antagonistic to being handcuffed and being separated from the subject, [Tim], which was sitting in the patrol car.'' This testimony was relevant and material in that it was part of the context in which the officers acted. The jury was entitled to know what defendant said and did in order to evaluate the conflicting testimony as to what the officers had said and done. Defendant's belligerent manner at the time of arrest was not a part of the People's case in chief. It became material only after defendant, in trying to overcome the officers' testimony as to admissions voluntarily made in their presence, claimed that Deputy Prestidge had threatened him. It then became proper rebuttal for the officer to tell what else was said immediately after the arrest.

that inquiry, it is proper to consider whether he was intoxicated at the time of the alleged offense. The weight to be given the evidence on that question and the significance to attach to it, in relation to all the other evidence, are exclusively within your province.''

Defendant's brief asserts that "Certain prejudicial statements and comments were made by the Judge during the testimony of the defendant." The one instance cited in the brief certainly cannot be classified as prejudicial. There is no basis in this record for criticizing the conduct of the trial judge.

The final question is whether it was proper for the trial court to sentence defendant upon all of the offenses of which he was convicted, in the light of Penal Code, section 654, which limits the punishment which may be imposed for a single act.

*Neal* v. *State of California,* 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], establishes that section 654 does not prohibit two punishments where the crimes are committed against two victims. In that case the defendant, who had ignited a house and burned its two occupants, was convicted of arson and two counts of attempted murder. The Supreme Court held that the defendant could not be punished both for arson and for attempted murder, but it upheld consecutive sentences for the two attempted murders.

Since defendant may properly be sentenced for each of the two kidnapings, there remains only the question of whether he may be punished both for kidnaping Betty and for assaulting her. ■ *People* v. *McFarland,* 58 Cal.2d 748, 760 [26 Cal.Rptr. 473, 376 P.2d 449], expresses the rule that "if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one."

■ Where, as here, defendant's conduct was in this respect ambiguous, the trial judge was required to draw an inference as to whether the two crimes were incident to a single objective. In this case the kidnaping of Betty began when she attempted to drive her car away during the assault on George. She was removed from the car to the beach, then she escaped and ran back to the car, was recaptured and dragged back to the beach, all before George had been subdued. Although Tim was the first to take her prisoner and to move her from the automobile to the beach, his conduct was a part of the joint enterprise for which defendant is responsible. The march down the beach to the spot where defendant made his assault with intent to commit rape occurred after George had been tied up. It was not unreasonable for the trial court to infer that the initial kidnaping of Betty was for some objective other than rape, e.g., to prevent her going

to find help for George. Since the trial judge could reasonably have inferred that the intent to commit rape was not formed until after the kidnaping had been accomplished, his decision to sentence for both offenses must be upheld. (*People v. Mistretta,* 221 Cal.App.2d 42 [34 Cal.Rptr. 365]; *People v. Fields,* 190 Cal.App.2d 515 [12 Cal.Rptr. 249].)

The judgment is reversed as to count V (assault by means of force likely to produce great bodily injury). In all other respects, the judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied August 10, 1964.